Kristen M. JACOBS, M.D., and South Bend Medical Foundation, Inc., Appellants–Plaintiffs,

v.

Nicole MANHART and Grant Manhart, Appellees–Defendants.

No. 20A03–0107–CV–238.

Court of Appeals of Indiana.

June 5, 2002.

Rehearing Denied July 15, 2002.

Philip E. Kalamaros, Hunt Suedhoff Kalamaros LLP, South Bend, IN, Attorney for Appellants.

David V. Stone IV, Anderson, IN, Barry D. Rooth, Theodoros & Rooth, P.C., Merrillville, IN, Attorneys for Appellees.

## OPINION

SULLIVAN, Judge.

Appellants, Kristen M. Jacobs and South Bend Medical Foundation, Inc. (collectively "SBMF"), bring this discretionary interlocutory appeal from the trial court's order against them on their motion for preliminary determination as to the medical malpractice statute of limitation. Upon appeal, SBMF presents one issue for our review: whether the trial court correctly determined that the medical malpractice statute of limitation did not bar the Manharts' claim.

We affirm.

In February 1996, Nicole Manhart had a PAP smear, the results of which revealed that she had severe dysplasia.[1] Shortly after her diagnosis, Ms. Manhart had a colposcopy, and one month later, a biopsy. Because of her history of gynecological problems, Ms. Manhart was instructed to have a follow-up PAP smear at three months, six months, and one year. If the results of the subsequent PAP smears were normal, Ms. Manhart was instructed

---

1. Dysplasia is defined as "abnormal growth or development (as of organs, tissues, or cells)." WEBSTER'S THIRD NEW INT'L DICTIONARY 712 (1966).

that she could continue with annual check-ups. Ms. Manhart acted in accordance with these instructions and had several follow-up examinations and PAP smears. The results of Ms. Manhart's PAP smear taken at her three month check-up on June 20, 1996, revealed that she still had marked dysplasia. Her doctor explained that such abnormal results were to be expected so soon after the biopsy. Ms. Manhart had follow-up PAP smears taken in October 1996, February 1997, and again in November 1997; the results of all three were reported as normal.

In February 1998, Ms. Manhart discovered that she was pregnant, and on February 12, she had a PAP smear by order of her obstetrician. The specimen was analyzed by South Bend Medical Foundation, Inc. and read by Dr. Kristen M. Jacobs on February 19, 1998. The report submitted to Ms. Manhart's obstetrician indicated that the results of the PAP smear were normal, and Ms. Manhart was so notified. Since the February 1998 test, Ms. Manhart was under the care of a physician for various reasons, including the birth of her twins on July 1, 1998, and a routine examination and PAP smear by Dr. Born on March 11, 1999 in South Dakota. Again, Ms. Manhart was told that the results of this PAP smear were normal.

In June 1999, Ms. Manhart began to experience breakthrough bleeding, which she attributed to use of birth control pills. When the bleeding recurred the following month, Ms. Manhart contacted Dr. Born's office, and her prescription for birth control pills was changed. The bleeding continued however. On August 24, 1999, Ms. Manhart was examined by Dr. Carlson. As part of the examination, Dr. Carlson performed an ultrasound which indicated that Ms. Manhart had a large tumor. On August 31, 1999, Ms. Manhart received a second opinion from Dr. Bailey in Minneapolis, who confirmed the diagnosis. Ms. Manhart was told that her cancer was at Stage III or IV, the highest stage, but that her prognosis was good. Dr. Carlson and Dr. Bailey both recommended that Ms. Manhart have a hysterectomy. On September 3, 1999, Ms. Manhart had a radical hysterectomy.

Given the size of her tumor and how quickly it had developed, Ms. Manhart became curious about why the results of her previous PAP smears indicated no such abnormalities. Ms. Manhart began collecting her medical records, and in October 1999, she asked Nora Clark, a cytotechnologist and family friend, to review the slides from her prior PAP smears to see if anything may have been missed. Sometime between Thanksgiving and Christmas 1999, Ms. Clark informed Ms. Manhart that she believed some of the slides had been misread.[2] During the week between Christmas 1999 and the New Year, Ms. Clark, at the direction of Ms. Manhart, forwarded the slides to Dr. Terry Clark, a pathologist in Lexington, Kentucky. Dr. Clark submitted his report in a letter dated April 13, 2000. In his report, Dr. Clark indicated that he agreed with some of the readings of Ms. Manhart's slides, but that he disagreed with others.[3]

---

2. Ms. Clark explained that as a cytotechnologist she could not make a positive diagnosis, but that she was qualified to rule out negatives on slides. Ms. Clark explained that in her experience all slides which were reviewed by a cytotechnologist and showed atypical cells or dysplasia were further reviewed by a pathologist, who would then make the diagnosis.

3. We note that in the letter sent to Ms. Manhart's attorney Dr. Clark does not indicate that he ever reviewed any slides from Ms. Manhart's February 1998 PAP smear. This letter was designated as Dr. Clark's "report."

On May 16, 2000, the Manharts filed their proposed complaint for medical malpractice with the Indiana Department of Insurance. The Manharts then filed their complaint in the Elkhart Superior Court on May 19, 2000. In Count VII against Jacobs and Count VIII against SBMF, the Manharts alleged that Jacobs and SBMF failed to comply with the applicable standards of care. As a result, the Manharts asserted that Ms. Manhart has suffered permanent injuries and disabilities and that she has suffered great pain, emotional distress, and mental trauma, and that Mr. Manhart has lost the consortium, society, and services of his wife.

On September 20, 2000, SBMF filed a motion for preliminary determination upon the issue of the medical malpractice statute of limitation pursuant to Indiana Code § 34–18–11–1 (Burns Code Ed. Repl.1998).[4] SBMF filed a memorandum of law in support thereof and designated the Manharts' complaint and excerpts from Ms. Manhart's deposition as evidence. SBMF asserted that the statute of limitation barred the Manharts' claim. On November 16, 2000, the Manharts filed a response and supporting memorandum asserting that the statute of limitation was unconstitutional as applied. The Manharts asserted that, at the very least, there were genuine issues of material fact. SBMF filed a reply to the Manharts' response to their motion for preliminary determination. The trial court then permitted the Manharts to file a sur-reply. A hearing was held on February 2, 2001. On March 23, 2001, the trial court entered the following order:

"Court, having reviewed the motions to dismiss filed by the deft., South Bend Medical Foundation, court now denies the same finding it a triggering date for the statute of limitations would be 8–24–99, the diagnosis of cervical cancer, and that the lawsuit in this cause and all matters were filed within the appropriate statute of limitations, the same is therefore denied."[5] Appellant's Appendix at 12.

On April 23, 2001, SBMF filed a motion to correct error. The trial court found that its order on SBMF's motion for preliminary determination was not a final appealable order and thus treated SBMF's motion as a motion to reconsider, which it denied. On June 13, 2001, the trial court granted SBMF's motion to certify the order for interlocutory appeal. This court accepted jurisdiction over this interlocutory appeal on July 30, 2001.

A motion for preliminary determination, when accompanied by evidentiary matters, is akin to a motion for summary judgment and is subject to the same standard of appellate review as any other summary judgment disposition. *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind.2000), *reh'g denied*. Upon review of a summary judgment determination, we apply the same standard applied by the trial court: where the evidence shows that there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law, summary judgment is appropriate. *Id.* We construe

---

4. A motion for preliminary determination is a procedure, unique to Indiana Malpractice Act claims, which authorizes the trial court to assert jurisdiction over such threshold issues before the Medical Review Panel has acted. *See Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 694 (Ind.2000), *reh'g denied*.

5. The trial court appears to have treated SBMF's motion for preliminary determination as a motion to dismiss. However, the motion is properly considered under the summary judgment standard of Ind. Trial Rule 56. *See Boggs*, 730 N.E.2d at 695.

all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party. *Id.*

■■■ Where a party asserts the statute of limitation as an affirmative defense and makes a prima facie showing that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense. *Id.* Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Hopster v. Burgeson,* 750 N.E.2d 841, 846–47 (Ind.Ct.App.2001). "When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter de novo." *Mahowald v. State,* 719 N.E.2d 421, 424 (Ind.Ct.App.1999).

■■■ The medical malpractice statute of limitation provides, in pertinent part, that "[a] claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect...." Ind.Code § 34–18–7–1 (Burns Code Ed. Repl.1998). The Manharts, citing authority from other jurisdictions, suggest that the statute of limitation should run from the discovery of the malpractice. However, our Supreme Court has rejected the construction proposed by the Manharts and has construed Indiana's medical malpractice statute of limitation as an "occur-rence-based" statute rather than a "discovery-based" statute. *See Martin v. Richey,* 711 N.E.2d 1273, 1278 (Ind.1999). In other words, an action for medical malpractice must be filed within two years from the date the alleged malpractice occurred, not when it was discovered. *Id.*

Upon appeal, SBMF argues that the trial court erred by not finding in their favor on their motion for a preliminary determination as to the malpractice statute of limitation. SBMF contends that it presented sufficient facts to establish a prima facie case that the malpractice statute of limitation barred the Manharts' action, and that the Manharts failed to carry their burden to establish an issue of fact material to a theory which would avoid that defense. Here, it is undisputed that the alleged malpractice asserted against SBMF occurred in February 1998, this being the triggering date for the running of the occurrence-based statute of limitation. It is also undisputed that the Manharts did not file their complaint against SBMF until May 2000. Thus by its terms, the two-year malpractice statute of limitation bars the Manharts' claim. To avoid the statute of limitation defense, the Manharts argue that the malpractice statute of limitation is unconstitutional as applied to them.[6]

■■■ Our occurrence-based malpractice statute of limitation has been upheld as constitutional on its face under Article 1, Sections 12 and 23 of the Indiana Constitution. *Martin,* 711 N.E.2d at 1279. However, our Supreme Court has held that

---

**6.** In their brief, the Manharts make reference to the fraudulent concealment doctrine in the context of their argument that the six months which remained of the limitation period after the trial court's perceived "triggering date" was not a reasonable amount of time in which to file their claim. The Manharts also reference the doctrine in further support of their assertion that it is a question of fact as to when Ms. Manhart had sufficient information such that she should have known of the alleged malpractice. However, the Manharts never actually claim that there was fraudulent concealment in the present case. Therefore, we will not address possible application of the fraudulent concealment doctrine.

under some circumstances, the statute of limitation is unconstitutional as applied to plaintiffs who, in the exercise of reasonable diligence, could not have discovered the alleged malpractice within the two-year limitation period. *See Van Dusen v. Stotts*, 712 N.E.2d 491, 495 (Ind.1999); *Martin*, 711 N.E.2d at 1285.

In *Martin* and *Van Dusen*, the plaintiffs suffered from diseases with "long latency" periods, and their injuries clearly did not manifest themselves until well beyond the two-year malpractice statute of limitation. Our Supreme Court held that because the occurrence-based limitation period foreclosed the plaintiffs from pursuing otherwise valid claims before they even had reason to know that such claims existed, the statute of limitation violated Article 1, Section 12 of the Indiana Constitution because it imposed an impossible condition on their access to courts and pursuit of tort remedies. *Van Dusen*, 712 N.E.2d at 493; *Martin*, 711 N.E.2d at 1285. The Court also held that, as applied to medical malpractice victims who could not reasonably be expected to discover the asserted malpractice within the limitation period, the malpractice statute of limitation violated Article 1, Section 23 of the Indiana Constitution because it was not "uniformly applicable" to all medical malpractice victims. *Martin*, 711 N.E.2d at 1281; *accord Van Dusen*, 712 N.E.2d at 493.

In *Van Dusen*, the Court went a step further and construed the statute of limitation to avoid its unconstitutional application as applied to the facts of that case and as to future cases which present the same issue. The Court held that where the statute of limitation has been determined to be unconstitutional as applied, those plaintiffs shall have a full two years from the date "they discover the malpractice and resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury." *Van Dusen*, 712 N.E.2d at 493. The implication of the Court's holding is that now Indiana has a judicially created discovery-based limitation period to be applied in situations where the occurrence-based statute of limitation is determined to be unconstitutional as applied.[7]

Less than a year after deciding *Martin* and *Van Dusen*, our Supreme Court was presented with the issue of whether the occurrence-based limitation period was unconstitutional as applied to plaintiffs who cannot reasonably be expected to learn of their injury when the alleged malpractice occurs, but nevertheless discover the injury before the expiration of the statute of limitation. *See Boggs*, 730 N.E.2d at 696. In *Boggs*, the injured party discovered the alleged malpractice over a year after it had occurred, but eleven months prior to the expiration of the statute of limitation. The Court, using the rules established in *Martin* and *Van Dusen*, upheld the constitutionality of the occurrence-based limitation period. *Boggs*, 730 N.E.2d at 696–97.

As to Article 1, Section 12, the Court, giving deference to the legislature's balancing of the benefits of certainty against the burdens imposed by the malpractice statute of limitation, held that under these circumstances strict application of the statute of limitation was constitutional as applied to plaintiff because she was not de-

---

7. The purpose of Indiana's malpractice statute of limitation is to create an event-based limit rather than a discovery-based limit. *See Martin*, 711 N.E.2d at 1286 (Shepard, C.J., dissenting). As noted by Chief Justice Shepard in his dissenting opinion in *Martin*, the majority's holding that the statute of limitation is unconstitutional as applied to plaintiffs who cannot discover their injury within the limitation period seems to categorize the unconstitutionality as facial unconstitutionality. *See id.*

nied a "meaningful opportunity" to pursue her malpractice claim. *Boggs,* 730 N.E.2d at 696. As to Article 1, Section 23, the *Boggs* Court held that "as long as the statute of limitations does not shorten this window of time [between the discovery of the alleged malpractice and the expiration of the limitation period] so unreasonably that it is impractical for a plaintiff to file a claim at all, as it did in *Martin* and *Van Dusen,* it is constitutional as applied to that plaintiff." *Boggs,* 730 N.E.2d at 697. The Court recognized that under the occurrence-based statute of limitation, medical malpractice plaintiffs will almost always have varying amounts of time in which to file their claims. *Id.* Indeed, plaintiffs who discover the alleged malpractice and resulting injury after the limitation period has expired, as in *Martin* and *Van Dusen,* will have two years from the date of discovery of the alleged malpractice to file their claims, while plaintiffs who discover the alleged malpractice before the expiration of the limitation period may have much less time to file their complaint. *See Van Dusen,* 712 N.E.2d at 493; *Boggs,* 730 N.E.2d at 696–97. As an illustration, the plaintiff in *Van Dusen* was given a full two years from the discovery of the alleged malpractice, for a total of four and one-half years from the occurrence of the alleged malpractice, in which to file a claim, while in *Boggs,* the plaintiff had eleven months.

The *Boggs* Court further acknowledged the Court of Appeals' concern over the possibility of plaintiffs discovering malpractice claims within a very short time before the expiration of the limitation period, but stated that the issues associated with such last minute discoveries would be best addressed on a case-by-case basis. 730 N.E.2d at 697–98. From this, the Court seems to suggest that the occurrence-based statute of limitation may be unconstitutional as applied to plaintiffs who make the "hypothetical eve of midnight discovery." *Id.* at 698. Our review of case law indicates that this issue has yet to be precisely addressed.

The implication of *Martin, Van Dusen,* and *Boggs* is that the determination of when a plaintiff discovered or should have discovered the malpractice and resulting injury is key to deciding the constitutionality of the occurrence-based statute of limitation as applied to a particular plaintiff. In situations where plaintiffs cannot reasonably be expected to discover the alleged malpractice until after the limitation period has expired, the occurrence-based statute of limitation is unconstitutional as applied and is replaced with a judicially created discovery-based statute of limitation. *See Van Dusen,* 712 N.E.2d at 493. Under another set of circumstances, wherein plaintiffs who discover the alleged malpractice and resulting injury within the two-year occurrence-based limitation period and have a reasonable amount of time in which to file their claims, the occurrence-based statute of limitation is constitutional as applied. *See Boggs,* 730 N.E.2d at 696–97.

In *Rogers v. Mendel,* 758 N.E.2d 946, 951 (Ind.Ct.App.2001) *trans. denied,* a panel of this court stated that *Martin, Van Dusen,* and *Boggs* together create a two-stage analysis for the application of Indiana's two-year malpractice statute of limitation. *See also Shah v. Harris,* 758 N.E.2d 953, 958–59 (Ind.Ct.App.2001), *trans. denied.* This two-stage analysis, however, is not readily conducive to the facts before us.[8]

---

8. Under the court's reasoning, the first step of the analysis is to determine whether the plaintiff discovered the alleged malpractice and resulting injury, or possessed enough infor-

In the present case, the first step in analyzing Indiana's medical malpractice statute of limitation as applied to the Manharts' claim is to determine when the alleged malpractice occurred and thus, when the two-year statutory period expired. As determined above, the malpractice statute of limitation expired in February of 2000. The next step is to determine the "discovery date," that is, when Ms. Manhart discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonably diligent person to make such discovery. *See Van Dusen,* 712 N.E.2d at 498–99. If we determine that the discovery date falls within the two-year limitation period, then a third stage of analysis must be applied to determine whether the time which remains of the limitation period is reasonable rendering the occurrence-based statute of limitation constitutional as applied. *See Boggs,* 730 N.E.2d at 697.

If, on the other hand, we determine that the "discovery date" was after the expiration of the occurrence-based statute of limitation, then, as in *Martin* and *Van Dusen,* the limitation period is unconstitutional as applied to the Manharts' claim. As noted above, under these circumstances, the Manharts would have a full two years from the date of discovery in which to file their claim. *See Van Dusen,* 712 N.E.2d at 497.

The determination of whether the statute of limitation is unconstitutional as applied is a question of law to be decided by the court on a case-by-case basis. *Rogers,* 758 N.E.2d at 952. In some instances, as here, the question will be subject to resolution on the basis of undisputed facts. *Id.* In other instances, the judge will be required to resolve disputed facts through pre-trial motion practice in order to determine the date upon which the claimant possessed enough information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and resulting injury. *Id.*

The Manharts contend that it was not until they received Dr. Clark's report on April 13, 2000, that Ms. Manhart "had the knowledge of the malpractice by these defendants that is required to trigger the running of the statute of limitations." Appellee's Brief at 8. SBMF asserts that the trial court correctly determined the "triggering date" to be August 24, 1999. In the alternative, SBMF asserts that at the time Ms. Clark expressed her opinion as to the slides, Ms. Manhart should be deemed to have had sufficient information which, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice claim. In either instance, SBMF contends that a reasonable amount of time remained of the limitation period

---

mation which, through the exercise of reasonable diligence, would have lead to such discovery within the limitation period. *Rogers,* 758 N.E.2d at 951. If the answer is affirmative, then the limitation period is constitutional as applied, so long as the claim can reasonably be asserted in the time which remains. *Id. See Boggs,* 730 N.E.2d at 697. If the discovery is after the limitation period has expired, then the limitation period is unconstitutional as applied. *Rogers,* 758 N.E.2d at 951–52. *See Van Dusen,* 712 N.E.2d at 493; *Martin,* 711 N.E.2d at 1285. Under these

circumstances, the court stated that a second stage of analysis must be applied to determine when the plaintiff possessed information which, in the exercise of reasonable diligence, would have led to the discovery of the alleged malpractice. *Rogers,* 758 N.E.2d at 952. This second stage leads to a determination of the date upon which a full two-year period of limitation begins to run.

Under the facts of this case, we must necessarily engage in the second stage of the *Rogers* analysis in order to apply the first stage of the analysis.

so that the Manharts could have filed their claim before the limitation period expired.

If the Manharts' contention is true, the discovery of the injury and alleged malpractice took place after the expiration of the malpractice statute of limitation, and thus, the limitation period would be unconstitutional as applied to the Manharts' claim. *See Van Dusen*, 712 N.E.2d at 493; *Martin*, 711 N.E.2d at 1285. If, however, we accept the trial court's determination as to the "triggering date," then the Manharts were aware of their possible malpractice claim prior to the expiration of the malpractice statute of limitation, a *Boggs* situation.[9] Thus, determining when the Manharts discovered the alleged malpractice and resulting injury, or possessed enough information that, in the exercise of reasonable diligence, should have led to the discovery, is crucial to reviewing the Manharts' argument.

In formulating the rule for determining what constitutes discovery, the *Van Dusen* Court considered Indiana cases which had construed the general tort liability and product liability statutes of limitation.[10] In one of the cases upon which the *Van Dusen* Court relied, it was held that the statute of limitation for a negligence and products liability action began to run when the plaintiff was informed by her doctor of a *possible* causal link between her illness and exposure to various chemicals and the need to investigate further. 712 N.E.2d at 499. In another case considered by the Court, it was emphasized that "while events short of a doctor's firm diagnosis

---

**9.** We are unsure how to interpret the trial court's order on SBMF's motion for preliminary determination. In the order, the trial court found that the "triggering date" for the limitation period was August 24, 1999. The trial court then concluded that the Manharts' claim was filed within the appropriate statute of limitation. As has already been determined, under our occurrence-based statute of limitation, the limitation period, by its terms, expired nearly three months prior to the filing of the complaint; therefore, the Manharts' cause of action could not have been filed within the statute of limitation. Thus, to the extent that the trial court meant for the "triggering date" of August 24, 1999 to serve as the date the statute of limitation began to run, as would be the case under a discovery-based statute, the trial court's conclusion is incorrect.

However, to the extent that the trial court's "triggering date" should be interpreted as being the date Ms. Manhart discovered the asserted malpractice and resulting injury, then implicit in the trial court's conclusion is that the six months which remained in the limitation period was so short as to be unconstitutional as applied to the Manharts. The trial court had to then conclude that because the limitation period was unconstitutional as applied, the Manharts should have had two years from the discovery date to file their complaint, and thus, the Manharts' complaint was filed within the appropriate statute of limitation. Because we assume that the trial court knows and correctly follows the applicable law, we will construe the trial court's order as following the latter interpretation.

**10.** We recognize that the context in which the Court formulated the discovery rule is different than that before us. Under the facts of *Van Dusen*, it was clear that the alleged malpractice could not have been discovered within the limitation period, thus the malpractice statute of limitation was unconstitutional as applied. The Court then proceeded to construe the limitation period so that it would not violate constitutional principles and concluded that plaintiffs in such a position should be given two years from the date they discover or should discover the asserted malpractice. The Court then formulated the above discovery rule for determining when the statute of limitation is triggered, or begins to run, as against this class of plaintiffs. Here, we are presented with the situation where it is necessary to make the discovery date determination before determining if the statute of limitation is unconstitutional as applied because the facts of this case do not place the Manharts' claim clearly within or outside of the two-year limitation period. Be that as it may, the *Van Dusen* rule for determining the discovery date is applicable here.

can provide a plaintiff with evidence of a reasonable possibility that another's act ... caused his injuries ..., there must be something more than the mere suspicion or speculation by a plaintiff who is without technical or medical knowledge." *Id.* at 498. This is not to say, however, that a plaintiff needs to know with certainty that malpractice has occurred. *Id.* at 499.

Applying the above reasoning to the facts presented in the case before it, the *Van Dusen* Court determined the discovery date to be when, in response to plaintiff's questions, his doctor indicated that there was "a reasonable possibility, if not a probability, that the specific injury was caused by a specific act at a specific time...." 712 N.E.2d at 499. The Court stated that under such circumstances, a plaintiff is deemed to have sufficient facts to require him to seek promptly any additional medical or legal advice needed to resolve any remaining uncertainty or confusion he may have regarding the cause of his injury and any legal recourse he may have, and his unexplained failure to do so should not excuse a failure to timely file a claim. *Id.*

 The Manharts argue that April 13, 2000, the day they received the report from Dr. Clark, was the point at which they knew about the alleged malpractice. They further assert that Ms. Clark's informal opinion should be treated differently than Dr. Clark's, in that more emphasis should be placed on Dr. Clark's opinion. We conclude that upon receiving Dr. Clark's report, the Manharts had more information than they needed to put them on notice that there was a reasonable possibility that Ms. Manhart's tumor had gone undetected and untreated as a result of SBMF's malpractice and that there was a need to investigate further. Indeed, it could be said that at that point the Manharts had actual knowledge of the alleged malpractice and resulting injury. However, as noted above, the discovery date does not depend upon when a plaintiff knows with certainty that malpractice has occurred; a plaintiff need only know facts that through reasonable diligence would lead to the discovery of the alleged malpractice and resulting injury. *See Van Dusen,* 712 N.E.2d at 498–99.

Here, Ms. Manhart had a history of severe dysplasia, a serious condition for which she was treated and directed to monitor by getting routine PAP smears. Ms. Manhart closely monitored her condition, and up until August 24, 1999, when she was diagnosed with cervical cancer, there is no evidence that Ms. Manhart had any information, which in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice and resulting injury. Indeed, prior to such diagnosis, Ms. Manhart reasonably assumed that her PAP smear slides had been properly read. Only after being diagnosed with cervical cancer and learning of the advanced stage of the disease did Ms. Manhart possess information which would even give rise to the "suspicion or speculation [of malpractice] by a plaintiff who is without technical or medical knowledge." *See Van Dusen,* 712 N.E.2d at 499.

Unlike *Van Dusen,* where the plaintiff's doctor advised the plaintiff that there was a reasonable possibility, if not a probability, that the specific injury was caused by a specific act at a specific time, here there was no such advice. Rather, Ms. Manhart had to first hear the diagnosis of tumor and advanced stage cancer, wait for the confirmation, and undergo a radical hysterectomy and the attendant recovery. She then acted with appropriate dispatch in seeking first an informal opinion and then a formal medical opinion. When that opinion was received, she commenced this proceeding within thirty-three days.

*Boggs* held that the plaintiff must have a "meaningful opportunity" to pursue her malpractice claim. 730 N.E.2d at 696. Where, notwithstanding the exercise of appropriate diligence, the plaintiff first becomes aware of a malpractice claim shortly before the expiration of the limitation period, the issue becomes whether the plaintiff faced "the practical impossibility" of asserting the claim before the limitation period expired. *Id.* at 697. What is practical impossibility must be addressed on a case-by-case basis. Here, looking at the totality of the circumstances giving rise to this claim,[11] we conclude that it was a practical impossibility for Ms. Manhart to assert her claim before the expiration of the limitation period and that rigid application of the occurrence-based statute would deny her the meaningful opportunity to pursue her claim. Accordingly, we affirm the trial court's determination that Ms. Manhart's claim was not barred by the statute of limitations.

The ruling of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.

11. The chronology and timing of the various events and the circumstances involved in this case have been extensively recited earlier in this opinion.