John F. CSICSKO, M.D. and David P. Lloyd, M.D., as individuals and Cardiovascular Associates of Northeastern Indiana, LLC, a professional Corporation, and Thomas P. Ryan, D.O., an individual and as the partner of William E. Baltes, M.D., William E. Baltes, M.D., as the partner of Thomas P. Ryan, D.O., Steven N. Rhinehart, M.D., Fort Wayne Medical Oncology and Hematology, Appellants–Petitioners,

v.

John HILL and Susan Hill, Sally McCarty, Commissioner, Indiana Department of Insurance, and John Whiteleather, Chairman of the Medical Review Panel, Appellees–Respondents.

No. 76A03–0308–CV–307.

Court of Appeals of Indiana.

March 24, 2004.

Publication Ordered May 11, 2004.

Cathleen M. Shrader, John M. Clifton, Jr., Barrett & McNagny, LLP, Fort Wayne, IN, Attorneys for Appellants Steven Rhinehart and FT. Wayne Medical Oncology and Hematologoy.

Kenneth J. Allen, Brock Alvarado, Michael T. Terwilliger, Kenneth J. Allen Associates, P.C., Valparaiso, IN, Attorneys for Appellees.

Diane C. Bauer, Calvert S. Miller, Miller, Carson, Boxberger & Murphy, LLP, Fort Wayne, IN, Attorneys for Appellants John F. Csicsko, M.D., Cardiovascular Assoc. of Northeastern Indiana, LLC, PC, David P. Lloyd, M.D., Thomas P. Ryan, D.O., and William E. Baltes, M.D.

**OPINION**

ROBB, Judge.

Doctors John Csicsko, David Lloyd, Thomas Ryan, William Baltes, and Steven Rhinehart, Cardiovascular Associates of Northeastern Indiana, and Fort Wayne Medical Oncology and Hematology (collectively, the "physicians") appeal the trial court's order against them on their motion for preliminary determination. We affirm.

*Issues*

The physicians present two issues for our review, which we restate as the following:

1. Whether the trial court properly found that the settlement agreement between the Hills and the Indiana Patient's Compensation Fund did not release the physicians from liability for injuries and losses sustained by the Hills; and

2. Whether the trial court properly denied the physicians' request that it find that the Hills received the maximum amount allowed under the Indiana Medical Malpractice Act.

*Facts and Procedural History*

In December 1999, John Hill ("Hill") was admitted to the Parkview Memorial Hospital for cardiac bypass surgery. Drs. Csicsko, Lloyd, and Rhinehart treated Hill during his stay at the hospital. In preparation for the surgery, Hill was administered a dose of Heparin.[1] After surgery, Hill continued receiving Heparin and was also administered Lovenox.[2] Subsequently, Hill developed a condition known as Heparin Induced Thrombocytopenia II.[3] As a result, both of Hill's legs were amputated above the knee, his left arm was amputated just below the elbow, and he suffered multiple organ failures.

On March 26, 2001, Parkview Hospital, Inc. and Parkview Health Systems, Inc.

---

1. Heparin is an anticoagulant that is often used to prevent blood clotting during cardiac bypass surgery. *See* http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202280.html.

2. Lovenox is used to prevent harmful blood clots from forming in the legs and is often given to patients who are unable to get out of bed due to a serious illness. *See* http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202686.html.

3. Heparin Induced Thrombocytopenia II is a disorder affecting blood platelets that causes blood clots to develop. *See* http://www.hosppract.com/issues/1998/05/dmmkelt.htm.

(collectively, "Parkview") entered into a settlement agreement with Hill and his wife, Susan, regarding all claims related to the health care provided by Parkview. Pursuant to the agreement, the Hills released Parkview from liability in exchange for $250,000. The Hills subsequently filed their amended proposed complaint with the Department of Insurance, naming the physicians as defendants and seeking damages for injuries and losses sustained while Hill was a patient at Parkview.

On December 21, 2001, the Hills entered into a Settlement Agreement and Release ("Release") with the Indiana Patient's Compensation Fund ("Fund"), which was later approved by the trial court. Pursuant to the agreement, the Hills released the Indiana Department of Insurance from all claims arising from Hill's care and treatment while at Parkview in exchange for one million dollars. The physicians subsequently filed a joint Petition for Preliminary Determination, alleging the following: (1) the Hills' agreement with the Fund released all claims against the physicians; and (2) the Hills obtained the maximum amount of compensation permitted by the Indiana Medical Malpractice Act.[4]

In its Preliminary Determination and Declaratory Judgment, the trial court found the following:

2) The Settlement and Releases between the Hills, Parkview Hospital and the Indiana Patient's Compensation Fund, when read in their entirety, were clearly not intended as a release of all parties. The documents speak for themselves.

3) The issue of set-off for the settlement received is premature for a preliminary determination.

ACCORDINGLY, IT IS ORDERED:

. . .

2) The [physicians'] request that the Hills be determined to have received the maximum amount they are entitled to under the Medical Malpractice Act, pursuant to the Releases they executed, is denied.

3) The [Hills'] Releases executed with Parkview Hospital and the Indiana Patient's Compensation Fund do not bar their right to pursue claims for other separate injuries against other health care providers.

Appendix to the Joint Brief of Appellants at 129–30. The physicians sought and were granted certification of the trial court's preliminary determination and declaratory judgment for interlocutory appeal, and we accepted jurisdiction. This appeal ensued. Additional facts will be provided as necessary.

### Discussion and Decision

The physicians contend the trial court erred in its preliminary determination and declaratory judgment. We disagree.

#### I. Standard of Review

When accompanied by evidentiary matters, a motion for preliminary determination is akin to a motion for summary judgment. *Jacobs v. Manhart*, 770 N.E.2d 344, 348 (Ind.Ct.App.2002), *trans. denied.* Therefore, it is subject to the same standard of appellate review as any other summary judgment disposition. *Id.* We apply the same standard applied by the trial court: summary judgment is appropriate only where the evidence shows that there are no genuine issues of material fact and the moving party is entitled to judgment

---

**4.** Under the Indiana Medical Malpractice Act, the total amount recoverable for a patient's injury or death cannot exceed $1.25 million. Indiana Code § 34–18–14–3(a)(3). The Hills received an aggregate sum of $1.25 million from their settlements with Parkview and the Fund.

as a matter of law. *Id.* We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the nonmovant. *Id.* at 348–49.

## II. The Release

 The physicians contend the Hills' settlement agreement with the Fund released the physicians from any liability for the Hills' injuries and losses.

A release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well. A release, as with any contract, should be interpreted according to the standard rules of contract law. Therefore, from this point forward, release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing.

*Huffman v. Monroe County Cmty. Sch. Corp.,* 588 N.E.2d 1264, 1267 (Ind.1992).

The parties disagree as to whether we look only to the language in the Release to decide this issue or whether we may also consider the language used in the Hills' settlement agreement with Parkview as well as the proposed complaints filed with the Indiana Department of Insurance. We need not address this dispute, since the Release between the Hills and the Fund, standing alone, shows that the parties did not intend to release the physicians from liability.

The Release expressly stated it was made "by and between [the Hills] and [the Commissioner of the Indiana Department of Insurance], in her capacity as Administrator of the Indiana Patient's Compensation Fund." Appendix to the Joint Brief of Appellants at 34. The Release further stated the following:

In consideration of the payment [of one million dollars from the Fund, the Hills] fully release, acquit, and forever discharge the Commissioner, the Indiana Department of Insurance, the Indiana Patient's Compensation Fund, and their agents, employees, representatives, attorneys, officials from any and all past, present or future claims, demands, or causes of action, to recover monetary damages, whether derivative or otherwise, whether based on tort, contract, or other theory of recovery, and which now exist or which may exist in the future on account of or in any way related to any and all known or unknown, foreseen or unforeseen, bodily and/or personal injuries suffered by [Hill] *as a result of the negligence settled by Parkview Hospital .... This release applies only to claims based upon the negligence of Parkview Hospital, Inc.*

*Id.* at 35–36 (emphasis added). Finally, the Release reiterated that the Hills understood that by executing the Release, they were barred from prosecuting or asserting any claims against the Fund "arising out of the *negligence settled by Parkview Hospital.*" *Id.* at 36 (emphasis added).

The physicians were not a party to the Release with the Fund and were not mentioned anywhere in the Release. Additionally, the Release repeatedly stated that it applied only to the negligence settled by Parkview Hospital. The Release, when read as a whole, demonstrates that the Hills and the Fund intended to release only the Fund from further liability, not the physicians.

## III. Maximum Amount Under the Medical Malpractice Act

 The Indiana Medical Malpractice Act states, "The total amount recoverable for an injury or death of a patient may not exceed ... [o]ne million two hundred fifty

thousand dollars ($1,250,000) for an act of malpractice that occurs after June 30, 1999." Indiana Code § 34–18–14–3(a)(3). The physicians contend that because the Hills received a total of $1.25 million from their settlements with Parkview and the Fund, they have received the maximum amount of compensation allowed under the Medical Malpractice Act.

In *St. Anthony Med. Ctr., Inc. v. Smith,* 592 N.E.2d 732 (Ind.Ct.App.1992), *trans. denied,* a patient went to the hospital to have a test performed. Due to an act of malpractice, the patient suffered a stroke and was admitted to the hospital, where he received an overdose of medication and died. The patient's estate sued, and we held the estate was entitled only to the statutory cap for damages under the Medical Malpractice Act, even if there were two separate acts of malpractice, because the patient suffered only one injury, a stroke, which led to his death. *Id.* at 739.

Furthermore, in *Bova v. Roig,* 604 N.E.2d 1 (Ind.Ct.App.1992), a patient lost sight in his left eye after a doctor committed malpractice both in performing the eye surgery and during post-operative care. We held since the patient suffered only one injury, blindness in his left eye, he was entitled to only one recovery under the Medical Malpractice Act, regardless of the number of acts of malpractice that led to the sole injury. *Id.* at 3.

Finally, in *Miller v. Memorial Hosp. of South Bend, Inc.,* 679 N.E.2d 1329 (Ind. 1997), a patient alleged that her obstetrician failed to appropriately treat her infant while in utero and after birth. Each act of malpractice caused additional, distinct brain damage to the infant. Our supreme court held since the two acts resulted in two separate brain injuries, the patient was allowed two separate recoveries under the Medical Malpractice Act. *Id.* at 1332. Our supreme court stated,

[The Medical Malpractice Act] authorizes only one recovery in those cases where a single injury exists, irrespective of the number of acts causing the injury. Conversely, there is no dispute that, if there are two separate and distinct injuries caused by two separate occurrences of malpractice, the statute does not preclude two separate recoveries (each separately limited in accordance with the Act).

*Id.* at 1331–32 (citations omitted). *See also Patel v. Barker,* 742 N.E.2d 28, 33 (Ind.Ct.App.2001), *trans. denied* (holding "the Indiana Medical Malpractice Act allows for one recovery for each distinct act of malpractice that results in a distinct injury, even if the multiple acts of malpractice occur in the same procedure.").

In their complaints and throughout this case, the Hills have alleged that Hill suffered separate, distinct injuries from medical malpractice. In their initial proposed complaint, the Hills alleged that "[t]he negligent acts of [the physicians] were separate and discrete acts of malpractice that resulted in separate and discrete injuries to John Hill." Appendix to the Joint Brief of Appellants at 19. In a letter attached to the Release entered into with the Fund, the Hills' counsel stated, "Mr. Hill suffered the loss of both legs above the knee, the loss of his left arm immediately below the elbow, and multiple organ failure and surgeries." *Id.* at 41. Therefore, a genuine issue of material fact exists as to whether the injuries Hill suffered, including the loss of many limbs, the failure of multiple organs, and the necessity of having to undergo several surgeries, constituted separate injuries from separate acts of malpractice under the Medical Malpractice Act.

### Conclusion

Because we hold the trial court did not err in finding that the Release executed

between the Hills and the Fund did not release the physicians from liability, and the trial court did not err in refusing to find that the Hills received the maximum amount allowed under the Indiana Medical Malpractice Act, we affirm the trial court's decision.

Affirmed.

SULLIVAN, J., and RATLIFF, SR., J., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal on March 24, 2004, marked Memorandum Decision, Not for Publication.

The Appellees John Hill and Susan Hill, by counsel, having thereafter filed their Motion to Publish, seeking an order from this Court publishing said opinion, alleging therein that the decision clarifies a rule of law and that the decision involves a legal issue of unique interest and substantial public importance.

The Court having reviewed its opinion, having examined the Motion to Publish of the Appellees and being duly advised, noting that the Appellants have failed to file a Response, the Court now finds that the Appellees' Motion to Publish Opinion should be granted and this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED that the Motion to Publish of Appellees John Hill and Susan Hill is GRANTED, and this Court's opinion heretofore handed down in this cause on March 24, 2004, marked Memorandum Decision, Not for Publication, is now ORDERED published.

All Panel Judges concur.