Victor HERRON, Appellant–Plaintiff,

v.

Anthony A. ANIGBO, M.D.,
Appellee–Defendant.

No. 45A03–0608–CV–378.

Court of Appeals of Indiana.

May 23, 2007.

Anthony DeBonis, Jr., Smith & DeBonis, LLC, Highland, IN, Attorney for Appellant.

Robert F. Parker, Chad J. Melchi, Burke Costanza & Cuppy, LLP, Merrillville, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Victor Herron appeals the trial court's order granting summary judgment in favor of Anthony A. Anigbo, M.D. The issue before us is whether Herron filed his medical malpractice complaint within the applicable statute of limitations.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Herron suffered a fall at his home, which rendered him quadriplegic. On March 6, 2002, after being admitted to Methodist Hospital in Merrillville, Indiana, Herron underwent several surgical procedures administered by Dr. Anigbo.[1] Three weeks later, Herron was discharged from the Hospital and released to Brentwood Care Facility in Chicago. Herron continued to suffer from post-surgery infections and pulmonary problems that required him to be on a ventilator for nine months.

On June 18, 2003, Mathew D. Hepler, M.D. saw Herron to determine whether he was fit to be released to a rehabilitation facility. Dr. Hepler determined that the infections and pulmonary difficulty had resolved, but also found that the instrumentation placed by Dr. Anigbo failed, and that the remaining construct was unstable, leaving him at risk for more problems and possible surgery. Based on this determination, Herron was not a candidate for the rehabilitation facility.

In November of 2003, Jacquelyn Carter, M.D. saw Herron and advised him that his situation had deteriorated due to Dr. Anigbo's negligent follow-up care. Thereafter, Dr. Hepler led a surgical team to perform several corrective procedures.[2]

On December 7, 2004 Herron filed an action against Dr. Anigbo alleging that due to a lack of follow-up care and observation by Dr. Anigbo, Herron suffered further limitation of his neck's mobility and compromised his recovery. After initial discovery was completed, Dr. Anigbo moved for summary judgment alleging that Herron's complaint was not timely filed within Indiana's medical malpractice statute of limitations. The trial court held a hearing and granted Dr. Anigbo's motion for summary judgment. The trial court found that Herron's June 2003 visit with Dr. Hepler produced sufficient facts for Herron to discover Dr. Anigbo's alleged malpractice. The trial court concluded Herron was not denied a meaningful opportunity to pursue his claim because he had nine months to file

---

1. Dr. Anigbo performed the following procedures: 1) the placement of the subclavian triple lumen access line; 2) anterior radical partial/total corpectomy at C3, C4, C5, and C6; 3) allograft strut graft with fibular allograft supplemented by cancellous; and 4) synthes plating C3–C6.

2. Dr. Hepler along with Dr. Carlos Dutra performed the following corrective procedures: 1) removal of instrumentation C3–C7; 2) removal of fibular allograft; 3) cervical corpectomy C3–C6; 4) cervical osteotomy C3–C4 through C6–C7; 5) revision anterior spinal fusion C2–C7 with fibular allograft; 6) Fibular autograft harvesting, left leg; 7) application of halo. *Appellant's App.* at 68.

his suit before the end of the statute of limitations period (March 6, 2004) but failed to do so. Herron now appeals.

## DISCUSSION AND DECISION

On appeal, the standard of review for summary judgment is the same as used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind.2000). Review of a summary judgment motion is limited to those material facts designated to the trial court. *Id.* All facts and reasonable inference drawn from those facts are read in favor of the non-moving party. *Id.* Summary judgment must be carefully reviewed to ensure that no party is denied their day in court. *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003).

■ When a party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced beyond the statutory period, the burden shifts to the other party to show "an issue of fact material to a theory that avoids the defense." *Jacobs v. Manhart*, 770 N.E.2d 344, 352 (Ind.Ct.App.2002) *reh'g denied.*

■ Herron contends that summary judgment was inappropriate because Indiana's medical malpractice "occurrence-based" statute is unconstitutional as applied to Herron. Indiana's medical malpractice statute of limitations, IC 34–18–7–1(b), provides in pertinent part:

> A claim ... may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect. ...

Our Supreme Court has upheld the facial validity of this statute under the Privileges and Immunities and Open Courts Clauses in Article I, Sections 12 and 23 of the Indiana Constitution. *Langman v. Milos*, 765 N.E.2d 227, 234 (Ind.Ct.App. 2002), *trans. denied; see Collins v. Day*, 644 N.E.2d 72 (Ind.1994). However, the Court held in *Van Dusen v. Stotts*, 712 N.E.2d 491, 495 (Ind.1999) and *Martin v. Richey*, 711 N.E.2d 1273, 1285 (Ind.1999) that under certain circumstances, the statute of limitation is unconstitutional as applied to certain plaintiffs, namely those who suffered from diseases with long latency period and injuries that did not manifest themselves until after the two-year limitations period. The court held that the statute treated different classes of citizens—those bringing tort or contract claims and those bringing medical malpractice claims—differently, such disparate treatment was permitted to preserve healthcare in Indiana. As applied to the claimants in *Martin* and *Van Dusen*, however, the statute created disparate treatment between similarly situated medical malpractice claimants who had different latency periods. The statute's justification did not extend to this sub-classification, and thus, the statute was unconstitutional as applied to such claimants. A year later, the Court upheld the "occurrence-based" nature of the statute of limitations for injuries discovered within two years of the alleged malpractice. *Boggs*, 730 N.E.2d at 695.

> We hold that as long as the statute of limitations does not shorten this window of time so unreasonably that it is impractical for a plaintiff to file a claim at all, as it did in [*Martin*] and [*Van Dusen*], it is constitutional as applied to that plaintiff.

*Id.*

■ In *Jacobs v. Manhart*, 770 N.E.2d at 352, this court held that the

*Martin, Van Dusen,* and *Boggs* decisions require a three-step analysis. First, we must determine when the alleged malpractice occurred and thereby when the statute of limitations will run. *Jacobs,* 770 N.E.2d at 352. Second, we must determine the "discovery date," the date the claimant discovered the alleged malpractice, or the date when the claimant possessed sufficient knowledge that a reasonably diligent person would discover the alleged malpractice. *Id.* And, finally, if the discovery date falls within the two-year limitation period, we must determine whether there remains reasonable time for the claimant to file his claim "rendering the occurrence-based statute of limitation constitutional as applied." *Id.* In *Van Dusen,* the "discovery date" was when the patient's doctor indicated "there was 'a reasonable possibility, if not a probability, that the specific injury was caused by a specific act at a specific time....'" *Id.* (citing *Van Dusen,* 712 N.E.2d at 499). This third inquiry is a question of law that courts must decide on a case-by-case basis. *Id.* And, sometimes, the trial court will be required to resolve disputed facts, i.e., the "discovery date," through pre-trial motions. *Id.*

In *Jacobs,* Manhart suffered from severe dysplasia and underwent routine PAP smear exams to monitor her condition. In February of 1998, Dr. Jacobs took a PAP smear of Manhart and indicated that the results were normal. Due to the severity of risks associated with dysplasia, Manhart regularly monitored her condition until she was diagnosed with cervical cancer in August of 1999. Prior to her diagnosis, Manhart did not have any evidence that in the exercise of reasonable diligence would have led her to suspect malpractice. Manhart's "discovery date" fell within two years after Dr. Jacobs' act, and under the statute of limitations, Manhart had six months to bring suit. This Court ruled that the time period remaining made it impractical for Manhart to file her claim. Thus, the application of the statute of limitations was unconstitutional as applied to Manhart because it would deny her a meaningful opportunity to bring suit.

Here, the trial court determined that Dr. Anigbo's alleged malpractice occurred on March 6, 2002. Then, the trial court found:

> that the June 2003 visit, in which Dr. Hepler informed Herron that the plate and structural allograft were displaced and that the fusion had failed, [were] sufficient facts in the exercise of reasonable diligence that should have lead to the discovery of the alleged malpractice.

*Appellant's App.* at 7. This discovery date, the trial court found, gave Herron a meaningful opportunity, nine months, to bring suit. *Id.*

Herron claims it was not reasonable for him to discover the alleged malpractice until November 2003, when Dr. Carter informed him that it was possible Dr. Anigbo negligently performed follow-up surgery and that it may be contributing to his continued injuries. He argues that Dr. Hepler's diagnosis objectively reported a problem with the surgery, but not that Dr. Anigbo was negligent in his actions.

In June of 2003 when Dr. Hepler assessed Herron, Dr. Hepler offered the following finding to Herron:

> He has a very complicated postsurgical list of problems. Clearly, he has a non-union and complete displacement of his structural allograft and plate. I suspect that this is an unstable construct and certainly at risk for worsening problems over time and may well require revision surgery. This most likely would require an anterior-posterior reconstruction, which is a major undertaking, in light of his list of problems.

*Appellee's App.* at 47. Perhaps, the foregoing information would have been sufficient for a neurosurgeon to be put on notice that he had been the victim of medical malpractice. Maybe, it would have been sufficient for general medical personnel to make such a determination. It is not sufficient to put the reasonable, non-medical lay person on such notice. Being told that one has "a non-union," a "complete displacement of [one's] surgical allograft and plate," and that the examining physician suspects "an unstable construct" is not tantamount to being told that one's medical problems are the result of medical malpractice. Moreover, as a quadriplegic, Herron has no perception or direct physical sensation of pain or discomfort that may indicate that something is amiss in one's medical treatment or recovery and his means of access to information are severely restricted. We conclude that the trial court erred when it concluded that Herron's discovery date was June of 2003 and that it was not until November 2003 when Dr. Carter informed Herron of Dr. Anigbo's possible malpractice that sufficient knowledge that a reasonably diligent person would discover the malpractice.

Finally, we must determine as a matter of law whether Herron had a meaningful opportunity to bring his claim after the November 2003 discovery date and before the March 2004 running of the statute of limitation. We conclude that he did not. After Herron met with Dr. Carter, Dr. Hepler and a team of surgeons undertook extensive corrective procedures on Herron's back. All of Dr. Anigbo's previous reconstructions and instrumentation were removed. In January 2004, Dr. Hepler reported that Herron was on oxygen and unable to be transported by car. It was not until the two-year anniversary of his injury that Dr. Hepler reported Herron was recovering well and that no new problems had manifested. Based on these facts, we find that Herron brought his claim within a reasonable time of discovering Dr. Anigbo's alleged malpractice and gaining sufficient strength to bring this action. It is unconstitutional to apply the "occurrence-based" nature of Indiana's medical malpractice statute of limitation to Herron. We therefore remand to the trial court to proceed with Herron's action.

Reversed and remanded.

RILEY, J., and FRIEDLANDER, J., concur.