ATTORNEY FOR APPELLANT
Anthony DeBonis, Jr.
Highland, Indiana

ATTORNEYS FOR APPELLEE
Robert F. Parker
Chad J. Melchi
Merrillville, Indiana

## In the
## Indiana Supreme Court



FILED
Nov 13 2008, 12:00 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 45S03-0811-CV-594

VICTOR HERRON,

*Appellant (Plaintiff below),*

v.

ANTHONY A. ANIGBO, M.D.,

*Appellee (Defendant below).*

Appeal from the Lake Circuit Court, No. 45C01-0503-CT-00040
The Honorable Lorenzo Arredondo, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-0608-CV-378

**November 13, 2008**

**Boehm, Justice.**

The Indiana Medical Malpractice Act provides for an occurrence-based statute of limitations, i.e., a medical malpractice claim must be filed within two years after the act or omission alleged to constitute malpractice. We have held that the statute is constitutional on its face but may violate the Indiana Constitution if applied to a plaintiff who despite exercise of reasonable diligence does not learn of the injury or malpractice before the period expires. We elaborate what exercise of reasonable diligence requires when, as here, the limitations period is occurrence-based. Limitations issues in most cases are resolved as a matter of law. There may, however, be genuine issues of material fact as to when the plaintiff in exercise of reasonable

diligence should learn of the injury or disease and that it may be attributable to malpractice. If limitations issues cannot be resolved as a matter of law on summary judgment, factual disputes are to be submitted to the trier of fact.

## Facts and Procedural History

This is an appeal from the grant of summary judgment against the plaintiff, Victor Herron, on the basis of the statute of limitations. Accordingly, we accept for these purposes the designated evidence most favorable to Herron.

Herron sustained a fall in his home that rendered him a quadriplegic. The next day, March 6, 2002, Dr. Anthony Anigbo performed spinal surgery, which included the placement of a bone graft and a plate, presumably to create a cervical fusion.[1] Herron remained in hospitals and care facilities following his surgery. He had difficulty speaking and suffered from infection and pulmonary difficulties that required the use of a ventilator for nine months. On June 18, 2003, Herron met with Dr. Matthew Hepler, who determined that Herron was not yet a candidate for a rehabilitation facility. Dr. Hepler's report noted several postoperative complications, some of which "may well require revision surgery." Dr. Hepler recommended more tests to determine further treatment.

In November 2003, Dr. Jacquelyn Carter informed Herron that his "condition has deteriorated since the accident, and that a likely cause of the deterioration was negligent follow-up care." On November 11, 2003, Herron underwent another spinal surgery, including removal of the bone graft and plate, "revision anterior cervical fusion" using another bone graft, and the "application of a halo."[2] As of January 22, 2004, Herron was unable to be transported by car and required the use of oxygen. Exactly two years after his fall, on March 5, 2004, Dr. Hepler noted that Herron was "doing well without new complaint." Herron was able to speak, but was still in a halo. Herron filed his complaint on December 7, 2004,[3] alleging medical malpractice by Dr.

---

[1] For a fuller explanation of the medical procedure, see Herron v. Anigbo, 866 N.E.2d 842, 843 nn.1-2 (Ind. Ct. App. 2007).

[2] A halo is a "circular band used in a cast or brace, attached to the skull with pins." Stedman's Medical Dictionary 848 (28th ed., Lippincott, Williams, & Wilkins 2006) (1911).

[3] The complaint also named Methodist Hospital, Inc., the operator of the Merrillville hospital where the surgery was performed, but the trial court granted summary judgment to the hospital, and the Court of

Anigbo in "failure to take proper precautions prior to surgery, failure to monitor the patient after surgery, and failure to properly perform the surgery."

Dr. Anigbo moved for summary judgment, contending that the complaint was barred by the two-year, occurrence-based statute of limitations pursuant to Indiana Code section 34-18-7-1(b) (2004). The trial court granted the motion, finding that Herron knew, or should in the exercise of reasonable diligence have known, of Dr. Anigbo's malpractice from Dr. Hepler's June 2003 report, and that the remaining nine-month window gave Herron a meaningful opportunity to file his claim before the statute expired in March 2004. The Court of Appeals reversed and remanded. Herron v. Anigbo, 866 N.E.2d 842, 843 (Ind. Ct. App. 2007). It held that Herron did not discover his claim until November 2003, when Herron met with Dr. Carter, and that Herron did not have a meaningful opportunity to pursue his claim in the ensuing four months before the two-year limitations period expired. Id. at 846. Both courts assumed the date of Herron's initial surgery, March 6, 2002, to be the date the limitations period began to run. We grant transfer concurrent with this opinion.

## Standard of Review and Burdens of Proof

This Court applies the same standard as the trial court when reviewing a grant or denial of summary judgment. Row v. Holt, 864 N.E.2d 1011, 1013 (Ind. 2007). Therefore, summary judgment is to be affirmed only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Id. All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the nonmoving party. Naugle v. Beech Grove City Sch., 864 N.E.2d 1058, 1062 (Ind. 2007). A defendant in a medical malpractice action who asserts the statute of limitations as an affirmative defense bears the burden of establishing that the action was commenced beyond that statutory period. Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692, 695 (Ind. 2000). If this is done, however, the facts establishing any incapacity or the reasonableness of the plaintiff's diligence in

---

Appeals dismissed Herron's appeal of that order with prejudice for failure to timely file a Notice of Appeal. See Herron v. Anigbo, No. 45A03-0608-CV-378 (Ind. Ct. App. Dec. 19, 2006). Dr. Anigbo is the sole remaining defendant.

3

filing a claim are uniquely within the plaintiff's knowledge. It is therefore appropriate that the burden shifts to the plaintiff to establish "an issue of fact material to a theory that avoids the defense." Id.

## I. The Limitations Period for Medical Malpractice Claims

The Indiana Medical Malpractice Act's two-year statute of limitations runs from the date of the negligent act or omission. Ind. Code § 34-18-7-1(b) (2004). In this respect it differs dramatically from the usual statute of limitations which leaves the period to assert a claim open for a fixed number of years after the claim accrues, which often requires that it be discovered. This occurrence-based limitations period is constitutional on its face. Johnson v. St. Vincent Hosp., Inc., 273 Ind. 374, 403-04, 404 N.E.2d 585, 603-04 (1980). Martin v. Richey, 711 N.E.2d 1273, 1279 (Ind. 1999), reaffirmed the holding in Johnson that the Indiana Constitution does not mandate a discovery rule or preclude an occurrence-based limitations period. We held, however, that the statute denied any remedy and therefore violated the Indiana Constitution if applied to bar the claim of a patient who could not reasonably be expected to learn of the injury within the two-year period. Id. at 1282. We later held that the same applies to a patient who knows of the injury but is unable in exercise of "reasonable diligence" to attribute it to malpractice. Booth v. Wiley, 839 N.E.2d 1168, 1172 (Ind. 2005).

### A. *Triggering an Occurrence-Based Limitations Period*

Malpractice claims may be asserted in a variety of contexts. Some claims are for failure to diagnose an unknown progressive condition such as the breast cancer in Martin. Others are for failure to arrest or cure a known progressive condition such as the degenerative eye condition in Booth. Yet others are for injuries created by the substandard treatment. An extreme example is surgery on the wrong limb. Similarly, the circumstances alerting the patient to the injury or to the potential of malpractice vary widely. A patient can learn the fact of disease or injury either from personal knowledge of pain or symptoms or from a professional examination. In each of these contexts, where the constitutionality of the occurrence-based limitations period as applied to a given case is in issue, the ultimate question becomes the time at which a patient "either (1) knows of the malpractice and resulting injury or (2) learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury."

4

Id. at 1172. Although we have sometimes referred to the critical date as the "discovery date," we think a more accurate term is "trigger date," because actual or constructive discovery of the malpractice often postdates the time when these facts are known. Moreover, the trigger date, unlike a typical discovery date applicable to an accrual of a claim, in most circumstances does not start a fixed limitations period. Rather, it is the date on which a fixed deadline becomes activated.

### B. *Remaining Time After the Period Is Triggered*

The length of time within which a claim must be filed after a trigger date in an occurrence-based statute also varies with the circumstances. A plaintiff whose trigger date is after the original limitations period has expired may institute a claim for relief within two years of the trigger date. See, e.g., Martin, 711 N.E.2d 1273 (claim timely filed in October 1994 when cancer first discovered in April 1994 even though the alleged malpractice took place in March 1991); Van Dusen v. Stotts, 712 N.E.2d 491 (Ind. 1999) (claim timely filed in 1996 when cancer discovered in 1995 even though the alleged malpractice took place in 1992). But if the trigger date is within two years after the date of the alleged malpractice, the plaintiff must file before the statute of limitations has run if possible in the exercise of due diligence. In Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692, 697 (Ind. 2000), we explained that

> As long as the claim can reasonably be asserted before the statute expires, the only burden imposed upon the later discovering plaintiffs is that they have less time to make up their minds to sue. The relatively minor burden of requiring a claimant to act within the same time period from the date of occurrence, but with less time to decide to sue, is far less severe than barring the claim altogether.

If the trigger date is within the two-year period but in the exercise of due diligence a claim cannot be filed within the limitations period, the plaintiff must initiate the action within a reasonable time after the trigger date. Booth, 839 N.E.2d at 1172.

### C. *Reasonable Diligence in the Face of an Occurrence-Based Statute*

In many malpractice cases the injury by its nature is known to the patient and suggests that there may have been malpractice. If so, even under an accrual or discovery-based limitations period reasonable diligence requires pursuing the facts to determine whether there is a claim. See 26 Am. Jur. Proof of Facts 3d Discovery Date 185 § 6, at 196 (1994). Under an

occurrence-based statute, however, the critical issue is what reasonable diligence requires, not when the claim accrues or is discovered. Because the Medical Malpractice Act provides an occurrence-based limitations period, reasonable diligence requires more than inaction by a patient who, before the statute has expired, does or should know of both the injury or disease and the treatment that either caused or failed to identify or improve it, even if there is no reason to suspect malpractice. As a matter of law, the statute requires such a plaintiff to inquire into the possibility of a claim within the remaining limitations period, and to institute a claim within that period or forego it.

Thus, in <u>Brinkman v. Bueter</u>, 879 N.E.2d 549, 550-51 (Ind. 2008), Mrs. Brinkman's first physician noticed all three signs of preeclampsia during a pregnancy check-up, but ruled it out three days later. Shortly after giving birth, Mrs. Brinkman was diagnosed with eclampsia. <u>Id.</u> at 551. A few months later, a second doctor told the Brinkmans that Mrs. Brinkman's preeclampsia had been unusual because she had not exhibited any symptoms until after the birth. <u>Id.</u> The Brinkmans filed their complaint against both doctors nearly five years later, after a third doctor told them that Mrs. Brinkman's symptoms of preeclampsia had not been properly treated. <u>Id.</u> at 552. Although no professional had explicitly advised them of possible improper treatment in the intervening five years, a unanimous Court held that the Brinkmans' claim was untimely. The eclampsia brought to light the potential of the preeclampsia and "nothing prevented the Brinkmans from bringing a claim about faulty diagnosis or treatment within the two-year statutory period." <u>Id.</u> at 555. After the diagnosis of eclampsia, the Brinkmans were obligated in exercise of reasonable diligence to learn of the earlier substandard care.

Similarly, if the patient cannot with reasonable diligence learn of the injury before the statute has expired, the date on which the patient learns of the injury and the prior treatment starts the limitations period, even if there is no basis to allege malpractice at that point. Thus, in <u>Martin</u>, the limitations period started when breast cancer was identified, because the patient was in a position to uncover the failure to identify it in an earlier mammogram, even if the patient at that point had no indication whether the earlier mammogram suggested her cancer. 711 N.E.2d 1273.

Justice Dickson urges deference to Herron's severely restricted condition. This has appeal, but we are not developing the common law in this area. We are exploring the extent to

6

which the Open Courts Clause of Article I, Section 12 of the Indiana Constitution requires constraining the legislative directive that all claims for medical malpractice are barred after two years from the occurrence giving rise to the claim. We therefore may invalidate the statutory directive only to the extent necessary to guarantee access to the courts. Neither inconvenience nor difficulty in proceeding is enough, if reasonable diligence would lead to discovery of the facts giving rise to the claim.

D. *Reasonable Diligence As a Question of Law or Fact*

Like many legal issues turning on "reasonable" conduct, the determination of the trigger date may raise issues of fact but often may be resolved as a matter of law. See Van Dusen, 712 N.E.2d at 499. The trigger date becomes a matter of law when it is clear that the plaintiff knew, or should have known, of the alleged symptom or condition, and facts that in the exercise of reasonable diligence would lead to discovery of the potential of malpractice. For example, the trigger date is established as a matter of law when a patient is told by a doctor of the "reasonable possibility, if not a probability, that the specific injury was caused by a specific act at a specific time." Id. at 500; see, e.g., Moyer v. Three Unnamed Physicians from Marion County & Del. County, 845 N.E.2d 252, 259 (Ind. Ct. App. 2006) (holding that trigger date when doctor told the plaintiff that there may be a link between prescribed medicine and heart disease). The date is also set as a matter of law when there is undisputed evidence that leads to the legal conclusion that the plaintiff should have learned of the alleged malpractice and there is no obstacle to initiating litigation. See Brinkman, 879 N.E.2d 549, 554-55.

The trigger date will be tolled as a matter of law when the alleged malpractice was not reasonably discoverable within the limitations period. This may be the case if the disease or injury remains latent for an extended period after the alleged malpractice. So, in Martin, 711 N.E.2d 1273, the limitations period for failure to identify breast cancer noticeable in an x-ray was tolled until the cancer was revealed by a subsequent x-ray because the patient had no symptoms identifiable without that technology. Similarly, in Harris v. Raymond, 715 N.E.2d 388, 390-91 (Ind. 1999), the limitations period for a defective jaw implant was tolled until a second doctor discovered the imploded implant in the course of treating the patient for an earache.

7

There may, however, be factual issues that determine whether the claim is time-barred. Reliance on a medical professional's words or actions that deflect inquiry into potential malpractice can also constitute reasonable diligence such that the limitations period remains open. Where the plaintiff knows of an illness or injury, but is assured by professionals that it is due to some cause other than malpractice, this fact can extend the period for reasonable discovery. See Halbe v. Weinberg, 717 N.E.2d 876, 878-79 (Ind. 1999) (holding that the limitations period was tolled for negligent insertion of silicone-based breast implants because the patient had been told that the implants were not silicone); Weinberg v. Bess, 717 N.E.2d 584, 586-88 (Ind. 1999) (same). We have also found that an explicit or implicit denial of causation may prevent the plaintiff from discovering malpractice. In Booth, the plaintiff underwent LASIK surgery in November 1998. 839 N.E.2d at 1173. In October 1999, he learned that he had permanent eye damage, but his doctors "continued to present other explanations for the vision difficulties, such as glaucoma and plaque associated with 'mini strokes,' without ever mentioning the [LASIK] surgeries as the cause of the worsening condition." Id. at 1174. By attributing his failing vision to other causes, the plaintiff's doctors created a factual issue as to whether he should have discovered the alleged malpractice before December 2000, when a new physician told him that LASIK surgery should not have been performed. Id. at 1176.

The physical incapacity of the plaintiff can in limited circumstances constitute yet a third ground for tolling the limitations period which ultimately turns on an issue of fact. In City of Fort Wayne v. Cameron, 267 Ind. 329, 370 N.E.2d 338 (1977), we recognized that under article I, section 12's guarantee of a remedy by due course of law, unusual circumstances of the plaintiff may prevent access to the courts and suspend the period in which reasonable diligence is required. In that case, a deputy sheriff shot the plaintiff, rendering him a quadriplegic confined to a hospital for over one year. Id. at 330, 370 N.E.2d at 339. Although the plaintiff, a minor at the time of the incident, filed a Tort Claims Act notice within three weeks after attaining majority, the notice was six months after the sixty-day period allowed at that time. Id. We held that the statute would be unconstitutional as applied to the plaintiff if he "was mentally and physically incapacitated" so that he could not give the notice as required by the statute. Id. at 333-34, 370 N.E.2d at 341. Enforcement of the time limit would "deprive him of his constitutional right to a 'remedy by due course of law.'" Id. Although Cameron was not a medical malpractice case, the same principle applies to a medical malpractice claim that is

8

alleged to have caused the plaintiff's inability to file. Cf. Martin, 711 N.E.2d at 1283 (citing Cameron with approval).

## II. Resolving Factual Issues

We have not yet specifically addressed the procedure to be followed in a malpractice case when a limitations issue cannot be resolved on summary judgment. The Court of Appeals has on occasion indicated that a pretrial hearing may be required. See Herron v. Anigbo, 866 N.E.2d 842, 845 (Ind. Ct. App. 2007) (citing Jacobs v. Manhart, 770 N.E.2d 344, 352 (Ind. Ct. App. 2002) (when the trigger date cannot be set as a matter of law, the trial judge "will be required to resolve disputed facts through pre-trial motion practice in order to determine the date")); Langman v. Milos, 765 N.E.2d 227, 235 (Ind. Ct. App. 2002). However, we agree with the prevailing view that factual issues relating to the running of the limitations period, such as the date on which the plaintiff first learns of the injury, are to be resolved by the trier of fact at trial. See Martin v. Arthur, 3 S.W.3d 684, 690 (Ark. 1999); Collins v. Pittsburgh Corning Corp., 673 A.2d 159, 163 (Del. 1996); Brin v. S.E.W. Investors, 902 A.2d 784, 795 & n.17 (D.C. 2006); Lipsteuer v. CSX Transp., Inc., 37 S.W.3d 732, 737 (Ky. 2000); Pennwalt Corp. v. Nasios, 550 A.2d 1155, 1164 (Md. 1988). We have so held in the context of a products liability case. Allied Resin Corp. v. Waltz, 574 N.E.2d 913, 915 (Ind. 1991) (holding that juries should determine factual disputes affecting limitation questions). We see no distinction for these purposes between the factual issues as to accrual of a claim under the Products Liability Act and factual issues as to the constitutionally required tolling of the occurrence-based limitations period under the Medical Malpractice Act. We note that the prevailing view in other jurisdictions is that factual issues surrounding the statute of limitations in medical malpractice cases are to be left to the trier of fact. See, e.g., Witherell v. Weimer, 421 N.E.2d 869, 874 (Ill. 1981); Maestas v. Zager, 152 P.3d 141, 148 (N.M. 2007); Schanilec v. Grand Forks Clinic, Ltd., 599 N.W.2d 253, 258 (N.D. 1999); Arant v. Kressler, 489 S.E.2d 206, 208 (S.C. 1997); Ware v. Gifford Mem'l Hosp., 664 F. Supp. 169, 171 (D. Vt. 1987) (applying Vermont law); Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 864 P.2d 921, 933 (Wash. 1993); McCoy v. Miller, 578 S.E.2d 355, 361 (W. Va. 2003); cf. Stephens v. Bohlman, 838 P.2d 600, 604 (Or. 1992) (wrongful death suit). But see Pederson v. Zielski, 822 P.2d 903, 907 n.4 (Alaska 1991); Shillady Elliott Cmty. Hosp., 320 A.2d 637, 639 (N.H. 1974); Lopez v. Swyer, 300 A.2d 563, 567 (N.J. 1973). Finally,

entrusting these factual disputes to the trier of fact is consistent with the provision in article I, section 20 of the Indiana Constitution that the right to a jury trial in civil cases "shall remain inviolate."

## III. Resolution of this Appeal

Herron's complaint alleged negligence in the March 6, 2002 surgery and also in failure to monitor for an unspecified time after that date. These two allegations raise different limitations issues. Herron filed his claim thirty-three months after the March 6, 2002 procedure. He did not assert any ground for late filing other than lack of full knowledge of his condition. Specifically, in response to an interrogatory asking for the basis of his contention that he was "unable to commence this action on or before March 8, 2004," he asserted only that the "extent of injuries was not made known to me at that time." As a matter of law, this is an inadequate exercise of due diligence. The constitutional right to a remedy does not require that a patient faced with an occurrence-based limitations period be informed of the extent of his injuries. Rather, it requires only that nothing prevent him from investigating whether he may have a claim. There is no contention that Herron was ignorant of either his injury, its failure to improve, or that he had been treated by Dr. Anigbo on March 6, 2002.

There is also no claim that there was any barrier to assertion of a claim within the two years following March 6, 2002. There is evidence that would support the conclusion that Herron's physical condition prevented him from investigating or pursuing a claim before some point in 2003. He suffered from infections, could not speak, and required a ventilator for nine months. But Herron's efforts to avoid the limitations bar focused on the time at which he was informed of the possibility of malpractice, not his physical incapacity. Herron argued that not until November 2003 was he expressly advised that there may have been substandard execution of the surgery. Even if we assume his disability prevented him from investigating a claim up to that point, once he was informed of the potential of malpractice reasonable diligence required investigation and assertion of the claim within the limitations period, if that could have reasonably been accomplished. As of November 2003, four months remained to assert a claim, and Herron did not file until thirteen months later. As a matter of law four months was sufficient time to get a claim on file unless Herron offered evidence that he was not reasonably able to consult an attorney who could investigate and file any claim within the limitations period. In

10

short, even if his physical condition made it unreasonable to demand that he initiate investigation of any potential claim before he was expressly informed of the possibility of malpractice, once he was so informed, reasonable diligence required him to take action to assert a claim within the limitations period unless he was physically incapable of doing so. Herron claimed only ignorance of the extent of his injuries, and that is as a matter of law an insufficient basis to find the occurrence-based limitations period to violate the right to a remedy afforded by article I, section 12 of the Indiana Constitution.

In sum, claims based on negligence in the May 6, 2002 surgery are barred because Herron failed as a matter of law to pursue his claim with reasonable diligence within the period required by the statute. An occurrence-based limitations period can produce harsh results. If Herron's surgery was below the standard of care, this is such a case. Herron's condition was and is severe, and it is understandable that his focus was on medical outcomes, not legal remedies, in the more than two years following the surgery. But the legislature has prescribed an occurrence-based limitations period, and Herron and all other patients are charged with knowledge of the law, however unrealistic that assumption may be in a given case. Any claim of malpractice in the surgery is therefore barred by the occurrence-based limitation.

In addition to negligence in the March 6 procedure, Herron alleged some post-March 6, 2002 negligence in "follow-up" and "monitoring." The designated materials accompanying Dr. Anigbo's motion for summary judgment include an interrogatory served on Herron requesting "the date on which you physician-patient relationship with [Dr. Anigbo] began, and the date on which it ended." Herron responds that the relationship began in "April or March of 2002 and ended upon my leaving the care of Methodist Hospital." Herron's designated evidence provides the date of his discharge from Methodist Hospital as May 31, 2002, more than two years before the complaint was filed. Herron's claim for negligent follow-up or monitoring is therefore also barred by the occurrence-based limitation.

## Conclusion

The trial court's grant of summary judgment is affirmed.

Sullivan, J., concurs.

Shepard, C.J., concurs in result with separate opinion.

Dickson, J., dissents with separate opinion in which Rucker, J., concurs.

**SHEPARD, Chief Justice, concurring in result.**

The General Assembly's decision to adopt an occurrence-based statute of limitations for medical malpractice claims was long ago upheld against a substantial list of constitutional challenges in <u>Johnson v. St. Vincent Hosp., Inc.</u>, 273 Ind. 374, 404 N.E.2d 585 (1980). We later held that the statute might be unconstitutional as applied if the nature of a patient's particular affliction was such that it could not be discovered within the period chosen by the legislature. <u>Martin v. Richey</u>, 711 N.E.2d 1273 (Ind. 1999). Nothing in the present facts prevented Mr. Herron from filing his claim on time, and I thus join in affirming the trial court.

**Dickson, J., dissenting.**

I dissent, believing that the majority today would create an unprecedented new and rigorous barrier preventing injured patients a reasonable opportunity to access the courts to seek remedy for medical malpractice claims, a barrier that fosters a climate of suspicion and doubt between patients and their health care providers. I also dissent from the majority's application of its new standard to the facts presented.

Because of the similarities between this case and <u>Overton v. Grillo</u>, ___ N.E.2d. ___(Ind. 2008), also decided today, my dissenting observations are similar in both. In this Court's seminal case of <u>Booth v. Wiley</u>, 839 N.E.2d 1168, 1172 (Ind. 2005), we expressly synthesized our prior medical malpractice statute of limitations jurisprudence from <u>Boggs v. Tri-State Radiology, Inc.</u>, 730 N.E.2d 692 (Ind. 2000), <u>Martin v. Richey</u>, 711 N.E.2d 1273 (Ind. 1999), and <u>Van Dusen v. Stotts</u>, 712 N.E.2d 491 (Ind. 1999), concluding that the discovery date "is triggered when a plaintiff either (1) knows of the malpractice and resulting injury or (2) *learns of facts that, in the exercise of reasonable diligence, <u>should lead</u> to the discovery of the malpractice . . ..*" <u>Booth</u>, 839 N.E.2d at 1172 (emphasis supplied). Expressing this a different way, we described it as "the date when the claimant discovered the alleged malpractice and resulting injury, *or possessed enough information that <u>would have led</u> a reasonably diligent person to make such discovery*." *Id*. (emphasis supplied). It is not enough that the facts "might" or "could" lead to such discovery, or that a mere possibility or potential malpractice is raised by such facts. No, <u>Booth</u> requires that the facts *should lead* or *would have led* to discovery of malpractice. An injured plaintiff is not required to suspect, investigate, or commence litigation unless the facts known are sufficiently significant as to create a reasonable *probability* that malpractice had occurred.

But the majority today appears to depart from <u>Booth</u> to require a plaintiff to file a medical negligence lawsuit whenever "the plaintiff in exercise of reasonable diligence should learn of the injury or disease and that it *may be* attributable to malpractice." Slip opin. at 1-2 (emphasis added). The majority later emphasizes that an injured patient's window for bringing an action against a negligent physician will be triggered if the patient "should know of both the injury or disease and the treatment that either caused or failed to identify or improve it, *even if there is no*

*reason to suspect malpractice*."  Slip opin. at 6 (emphasis added).  In further contrast to the "should lead" standard established in <u>Booth</u>, the majority today declares that the limitation period will start "*even if there is no basis to allege malpractice at that point*," slip opin. at 6 (emphasis added), and the majority believes the trigger date begins when the patient should have known "of the *potential of malpractice*."  Slip opin at 7 (emphasis added).

I am also troubled that the new standard advanced by the majority today appears to impose upon injured patients an obligation of suspicious investigation never envisioned by <u>Booth</u>, and which is contrary to its express holding.  It is reasonable for patients to trust their physicians' medical care and advice.  The law does a disservice when it fosters a climate of suspicion and doubt between patients and their health care providers, requiring patients to promptly question and investigate even normal and routine medical care they receive.

I also dissent to the majority's application of its new standard to affirm summary judgment for Dr. Anigbo.  The majority finds significant that the plaintiff "argued that not until November 2003 was he expressly advised that there may have been substandard execution of the surgery" and concludes that "once he was informed of the potential of malpractice reasonable diligence required investigation and assertion of the claim within the limitations period, if that could have reasonably been accomplished."  Slip opin. at 10.

> The majority appears to base its result upon Herron's response to interrogatory 22:
>
> 22.  With respect to your allegation that you realized or discovered that you allegedly suffered injuries due to the negligence of this Defendant in November, 2003, state why you were unable to commence this action on or before March 8, 2004.
> ANSWER:  The extent of injuries was not made known to me until that time.

Appellant's App'x at 83.  The majority believes that the plaintiff's evidence on summary judgment "claimed only ignorance of the extent of his injuries," slip opin at 10-11, but not physical incapability to assert his claim.  I disagree.

This single interrogatory answer is but one solitary item among many significant facts that are appropriate for consideration on the defendant's motion for summary judgment.  Abundant additional facts remain demonstrating that Herron was profoundly disabled during the

2

three months that remained for him before the filing deadline once he learned sufficient information to attribute his injuries to medical negligence. Herron, a quadriplegic, was confined in a "halo" device, was on oxygen, and was unable to be transported by car. In November of 2003, just four months before the filing deadline, he had undergone a second spinal surgery, this one including removal of the bone graft and plate, "revision anterior spinal fusion" using another bone graft, and the application of the halo. Appellant's App'x at 68.

In light of the evidence of Herron's manifest disabilities, I cannot agree that his single interrogatory answer warrants summary judgment for Dr. Anigbo as to the initial spinal surgery of March 6, 2002, even under application of the new "potential for malpractice" standard adopted today by the majority. The totality of the evidence clearly demonstrates a genuine issue of material fact as to whether Herron's incapacity prevented him from filing his complaint during the final four months of the statutory period and thus deprived him of his constitutional right to a remedy by due course of law. City of Fort Wayne v. Cameron, 370 N.E.2d 338, 341 (1977).

I believe that the trial court's grant of summary judgment should be reversed. For these reasons, I dissent.

Rucker, J., concurs.