# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**ROBERT S. GRIMM**
**ALVIN J. KATZMAN**
Katzman & Katzman, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**DANNY E. GLASS**
**JOHN J. KREIGHBAUM**
Fine & Hatfield, P.C.
Evansville, Indiana

FILED

Oct 17 2013, 10:09 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NORTH AMERICAN ROOFING SERVICES, INC., | ) ) ) |
| Appellant-Plaintiff, | ) ) |
| vs. | ) ) No. 26A01-1303-PL-125 |
| MENARD, INC., | ) ) ) |
| Appellee-Defendant. | ) ) |

APPEAL FROM THE GIBSON SUPERIOR COURT
The Honorable Earl G. Penrod, Judge
Cause No. 26D01-0906-PL-11

**October 17, 2013**

**OPINION - FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Menard, Inc., hired North American Roofing Services, Inc. ("NARSI"), to install a roof on a new store that was being built.  During construction, a portion of the structure collapsed and fell on two workers, injuring them and resulting in lawsuits.  After the roof was completed, Menard refused to pay NARSI, and NARSI filed suit.  NARSI now appeals the trial court's denial of its motion for partial summary judgment and the grant of summary judgment to Menard.  We reverse and remand.

## ISSUE

NARSI raises one issue, which we restate as:  whether the court erred in denying partial summary judgment to NARSI and granting summary judgment to Menard.

## FACTS AND PROCEDURAL HISTORY

Menard decided to build a store in Princeton, Indiana.  In 2007, Menard and NARSI executed a contract, pursuant to which NARSI agreed to install a membrane roof on the store.  Menard ultimately agreed to pay NARSI $209,529 for the job.  The contract contains an indemnity clause, which provides as follows:

> [NARSI] shall indemnify and hold harmless [Menard], its agents and employees from any and all liability, damages, expenses, claims, demands, actions or causes of action, including attorney fees, arising out of the performance of the work hereunder, whether such liability, damages, expenses, claims, demands, actions or causes of actions are caused by [NARSI], its subcontractors, or their agents or employees, or any persons acting on their behalf.

Appellant's App. p. 28.  The contract also contains a provision entitled Article 9, Section E ("Section E"), which sets forth circumstances under which Menard may decline to pay NARSI for its work.  Appellant's App. p. 29.  That clause provides:

2

[Menard] may withhold payment from [NARSI] because of:

> (1)    defective work not remedied;
> (2)    third party claims filed or reasonable evidence indicating probable filing of such claims;
> (3)    failure of [NARSI] to make payments properly to subcontractors or for labor, materials, or equipment;
> (4)    reasonable doubt that the uncompleted Contract Work can be completed for the unpaid balance of the Contract Sum;
> (5)    damage to another Contractor;
> (6)    reasonable indication that the Contract Work will not be completed within the Contract Time; or
> (7)    unsatisfactory prosecution of the Contract Work by the Contractor.

*Id.* at 29-30.

In September 2007, during construction, a portion of the building collapsed after heavy rains. Debris fell on construction workers Michael Folsom and Derek Hazelip, causing them serious injuries.

Folsom sued Menard, NARSI, and other contractors in federal court, and Hazelip sued Menard, NARSI, and other contractors in state court. Their complaints are similar in many respects. Folsom and Hazelip both alleged that Menard:

> provided architectural drawings, specifications, blue prints, and material lists for the construction at the [building site]; further, its representatives attended and participated in safety meetings, and provided supervision and inspection services of work done and materials provided by those with whom it contracted directly as well as those that contracted with the general contractor, CDI, Inc.

*Id.* at 105, 114-15. The complaints further alleged that NARSI "was under contract with [Menard] to install a membrane roofing system according to specifications provided by [Menard] and began the installation of that membrane prior to September 26, 2007." *Id.* at 106, 115. In addition, Folsom and Hazelip each claimed, "[NARSI] failed to provide

3

adequate runoff or drainage for the membrane on the structure at the [building site]." *Id.* at 106, 115. They also alleged that water accumulated on the membrane roof and, "as the result of the actions of [NARSI], [Menard], [CDI], and [another contractor] the water was unable to drain or run off," which led to the collapse. *Id.* at 106, 116. Both Folsom and Hazelip asserted that Menard, NARSI, and other contractors owed them a duty of care and, "by their acts and omissions, individually and jointly," breached the duty. *Id.* at 107, 116.

In both lawsuits, Menard filed cross-claims against NARSI and other contractors. Furthermore, Menard separately sued various insurers, including NARSI's liability insurance carrier, in federal court, claiming failure to defend and seeking indemnification.[1]

Meanwhile, it is undisputed that NARSI completed the roofing job, and the store opened for business. It is also undisputed that Menard refused to pay NARSI, claiming that NARSI was contractually obligated to indemnify it against liabilities resulting from the roof collapse. NARSI filed a mechanic's lien against the store and later filed suit to foreclose upon the lien, thereby beginning this case.

Eventually, Folsom and Hazelip executed settlement agreements with Menard, NARSI, and the other defendants, and they dismissed their lawsuits. Menard dismissed its cross-claims against NARSI in those lawsuits. The settlement agreements have not been included in the record, but the parties agree that Menard, NARSI, and other

---

[1] Other provisions in the contract between Menard and NARSI required NARSI to obtain Workers Compensation Insurance, Comprehensive General Liability Insurance, and Builders Risk "All Risk" Insurance, in which policies Menard was to be designated as an "additionally insured." Appellant's App. pp. 30-31.

contractors each contributed to the settlements. Menard subsequently dismissed its federal lawsuit against the insurers.

NARSI's case against Menard remained active, and NARSI amended its complaint to add a claim of breach of contract.[2] In its answer to NARSI's amended complaint, Menard raised affirmative defenses based on the contract's indemnification clause and Section E. Next, NARSI filed a motion for partial summary judgment, limited to its claim for breach of contract. Menard filed a motion for summary judgment as to both of NARSI's claims.

After a hearing, the court denied NARSI's motion for partial summary judgment. The court granted Menard's motion, determining that Menard was "entitled to judgment as a matter of law on [NARSI's] claim for Breach of Contract." *Id.* at 13. The court further determined that NARSI's claim to foreclose upon the mechanic's lien must also fail and, having disposed of both of NARSI's claims, entered judgment in favor of Menard. This appeal followed.

DISCUSSION AND DECISION

This Court applies the same standard as the trial court when reviewing a grant or denial of summary judgment. *Herron v. Anigbo*, 897 N.E.2d 444, 448 (Ind. 2008). Therefore, summary judgment is to be affirmed only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Id.* All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the nonmoving party. *Id.*

---

[2] NARSI also added a claim of unjust enrichment but later moved to dismiss that claim.

5

The party moving for summary judgment bears the burden of making a prima facie showing that there is no genuine issue of material fact and that he or she is entitled to a judgment as a matter of law. *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1270 (Ind. 2009). Once the moving party meets these two requirements, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact by setting forth specifically designated facts. *Id.* The fact that the parties have both filed motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012).

NARSI argues that it is entitled to summary judgment on its claim for breach of contract because it fulfilled its obligations to Menard. Menard does not dispute that it and NARSI had a valid contract, that NARSI performed the work it was contractually obligated to perform, and that Menard has withheld payment. Thus, NARSI has set forth a prima facie claim of breach of contract, and Menard is obligated to show the existence of a genuine dispute of material fact. Menard responds that the indemnification clause and Section E authorized it to withhold NARSI's payment.

Before examining those clauses, we review our rules of contract interpretation. The ultimate goal of any contract interpretation is to determine the intent of the parties at the time that they made the agreement. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). We look at the contract as a whole. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005). If a contract's provisions are clear and unambiguous, courts must give the provisions their plain and ordinary meaning. *Id.* at 251.

An indemnity clause involves a promise by one party (the indemnitor) to reimburse another party (the indemnitee) for the indemnitee's loss, damage, or liability. *Mead Johnson & Co. v. Kenco Group, Inc.*, 899 N.E.2d 1, 3 (Ind. Ct. App. 2009). The basic purpose of an indemnity clause is to shift the financial responsibility to pay damages from the indemnitee to the indemnitor. *Id.* We construe an indemnity agreement to cover all losses and damages to which it reasonably appears the parties intended it to apply. *Id.*

The terms of the indemnification clause are set forth above. NARSI argues, correctly, that this clause does not require NARSI to indemnify Menard for negligent acts that are solely attributable to Menard. An indemnification clause that seeks to require indemnification for the indemnitee's own negligence must "expressly state, in clear and unequivocal terms," that the parties have agreed to such terms. *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 583 N.E.2d 142, 146 (Ind. Ct. App. 1991); *see also* Ind. Code § 26-2-5-1 (1975) (an indemnity clause in a "construction or design contract" that indemnifies the indemnitee against liability from the sole negligence of the indemnitee or its agents is "against public policy and . . . void and unenforceable"). The clause in this case does not clearly and unequivocally require NARSI to indemnify Menard for Menard's own negligence.

Based on the foregoing, NARSI would be obligated under the clause at issue to indemnify Menard for liability, damages, etc., arising out of NARSI's negligence. To prevail on its motion for summary judgment on its defense to NARSI's claim, Menard would have to demonstrate that it had incurred liability due to negligence of NARSI. The

7

only evidence on this point is that Menard, along with NARSI and other contractors, contributed to settlements of the Folsom and Hazelip claims, and that Menard paid more toward the settlements than the $209,529 due to NARSI. This falls short.

The claims of Folsom and Hazelip were subject to the Indiana Comparative Fault Act, which requires that liability be apportioned among multiple defendants according to the degree of each defendant's responsibility for an injury, rather than jointly and severally. *See* Ind. Code § 34-51-2-3 (1998) ("legal requirements of causal relation apply to . . . fault as the basis for liability."). In addition, the Act eliminated the right of contribution among tortfeasors where applicable but preserved rights of indemnity. Ind. Code § 34-51-2-12 (1998).

No court or agreement has allocated liability for Folsom and Hazelip's injuries among Menard, NARSI, other contractors, and the workers. Menard, NARSI and other contractors each contributed funds to settle those lawsuits, but Menard offers nothing to show NARSI's degree of responsibility for Folsom and Hazelip's injuries or that the contributors paid for anything but their own shares of fault. In the absence of evidence on these points, we conclude that Menard and NARSI paid for their shares of the fault for the accident, and Menard has failed to set forth any facts that establish a genuine dispute as to whether Menard is excused from paying NARSI under the contract due to the indemnification clause.

Next, Menard contends that it is excused from paying NARSI under Section E of their contract, specifically the portion authorizing Menard to withhold payment if necessary to satisfy "third party claims filed or reasonable evidence indicating probable

8

filing of such claims." Appellant's App. p. 29. Menard concedes that this provision would only allow it to withhold payment to NARSI due to "third-party claims [arising] from NARSI's work." Appellee's Br. p. 9. However, Folsom and Hazelip's third party claims have been settled and dismissed. Menard and NARSI both paid money to Folsom and Hazelip pursuant to the settlement, and Menard points to no evidence that Folsom and Hazelip's claims otherwise remain active. In addition, Menard does not identify any other third party claims arising from the September 2007 structural collapse that remain pending. Giving Section E's unambiguous language a plain and ordinary reading, it does not justify withholding payment from NARSI once third party claims have been resolved, absent the application of some other contractual provision such as the indemnification clause. We have already determined that Menard has failed to establish a dispute of material fact as to whether the indemnification clause applies.

In order to defeat NARSI's motion for partial summary judgment, Menard was obligated to rebut NARSI's prima facie case for breach of contract by establishing a dispute of material fact as to its right to withhold payment. We have determined that Menard did not establish such a dispute. Consequently, Menard also failed to establish as a matter of law that it was entitled to prevail upon its own motion for summary judgment. The trial court erred by denying NARSI's motion for partial summary judgment and by granting Menard's motion for summary judgment.

CONCLUSION

For the reasons stated above, we reverse the judgment of the trial court and remand with instructions to: (1) deny Menard's motion for summary judgment on

9

NARSI's claims for breach of contract and foreclosure of mechanic's lien; (2) grant NARSI's motion for partial summary judgment on its claim for breach of contract; and (3) move forward to resolve NARSI's claim to foreclose upon mechanic's lien.

Reversed and remanded.

KIRSCH, J., and BRADFORD, J., concur.