

FILED

Nov 28 2018, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS
ANONYMOUS PHYSICIAN AND
ANONYMOUS MEDICAL PRACTICE

David C. Jensen
Robert J. Feldt
Eichhorn & Eichhorn, LLP
Hammond, Indiana

ATTORNEYS FOR APPELLANT
ANONYMOUS HOSPITAL

Brian J. Paul
Andrew L. Campbell
Melissa M. Orizondo
Matthew K. Giffin
Faegre Baker Daniels, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David J. Cutshaw
Kelley J. Johnson
Gabriel A. Hawkins
Cohen & Malad, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anonymous Physician,
Anonymous Medical Practice,
Anonymous Hospital,

*Appellants-Petitioners,*

v.

Michelle Kendra, as Personal
Representative of the Estate of
John Kendra, Deceased,

*Appellee-Respondent*

November 28, 2018

Court of Appeals Case No.
18A-CT-323

Interlocutory Appeal from the
Lake Superior Court

The Honorable John M. Sedia,
Judge

Trial Court Cause No.
45D01-1706-CT-139

**Crone, Judge.**

## Case Summary

Anonymous Physician ("AP"), an employee of Anonymous Medical Practice ("AMP"), implanted a cardiac pacemaker with a defibrillator ("CRT-D") in John Kendra at Anonymous Hospital ("AH") in 2006. AP later performed other procedures related to the CRT-D. John died in 2012. In 2015, John's daughter, Michelle Kendra, as the personal representative of his estate, filed a proposed medical malpractice complaint against AP, AMP, and AH (collectively "Appellants") alleging that the CRT-D surgery and subsequent procedures were unnecessary. Appellants moved for summary judgment on the basis that Michelle's complaint was filed outside the two-year statutory limitation period for medical malpractice claims. Michelle argued that the relevant statute was unconstitutional as applied and therefore the limitation period should be tolled. The trial court agreed with Michelle and denied Appellants' summary judgment motion. Appellants contend that the trial court erred. We agree with Appellants and therefore reverse.

## Facts and Procedural History

In April 2006, sixty-three-year-old John was admitted to AH's emergency room and was diagnosed with congestive heart failure and chronic pulmonary obstruction, among other things. AP implanted a CRT-D on May 1, and John was discharged five days later. AP subsequently performed various procedures

related to the CRT-D. John died on June 30, 2012, from congestive heart failure and chronic obstructive pulmonary disease.

[3] On July 24, 2015, Michelle filed a proposed medical malpractice complaint against Appellants. The complaint alleged in pertinent part that as a result of AP's unspecified negligence, John "suffered severe and permanent physical injuries and disabilities, endured great pain and suffering, mental distress and anguish and trauma, and, incurred reasonable medical and related expenses." Appellants' App. Vol. 2 at 55.[1] In June 2017, Appellants filed a petition for preliminary determination and a motion for summary judgment asserting that Michelle's complaint was untimely filed. *See* Ind. Code § 34-18-7-1 (medical malpractice claim may not be brought unless filed within two years after date of alleged malpractice). In support of their motion, Appellants designated portions of Michelle's complaint and John's medical records.

[4] Michelle filed an opposing memorandum, in which she asserted that the CRT-D was medically unnecessary and "was used as a basis" for AP to perform numerous other procedures. Appellants' App. Vol. 2 at 103. She also asserted that the statutory limitation period should be tolled because John "could not have known that he did not meet the criteria for the implantation" of a CRT-D. *Id*. at 104. In support of her memorandum, Michelle designated the affidavit of

---

[1] The complaint also contains allegations of wrongful death, personal injury, and fraudulent concealment, all of which Michelle has since abandoned.

physician Dr. Nadim Nasir, Jr., as well as her own affidavit, which reads in pertinent part as follows:

> 4. No one in my family or in my acquaintance ever indicated that they had any awareness of [AP's] misstatements or potentially unnecessary procedures and surgeries.
>
> 5. I found out about [AP's] misstatements and potentially unnecessary procedures and surgeries in or around October of 2014 when I saw a newspaper article and a news story on television about the misrepresentations of [AP].

*Id*. at 121. Appellants filed a motion to strike both affidavits.

[5]     The trial court held a hearing on Appellants' motions and issued an order that reads in relevant part as follows:

> The question presented by [Appellants'] Motion for Summary Judgment is: as a matter of law, after all factual inferences are construed in favor of the Estate, and all doubts regarding the existence of a material issue are resolved against [Appellants], did John Kendra, and, after his death, his Estate, not know, nor in the exercise of reasonable diligence, could not have discovered, that an injury had been sustained within two years of John Kendra's death on June 30, 2012?
>
> [Appellants have] established that the medical malpractice action was filed outside the statute of limitations. The Estate then has the burden to establish an issue of fact material to a theory that avoids the defense. The Estate designated medical records demonstrating that John Kendra had undergone, in addition to the implant of a CRT Defibrillator, 3 stress tests, 14 echocardiograms, 3 carotid dopplers, 1 bypass, 19 AV Optimizations, 2 heart catheterizations, and subsequent surgeries

for generator replacement and new leads. The nature and general acceptance of the use of these tests in cardiac patients creates a material issue of fact as to whether John Kendra, or any other patient not schooled in medicine, would be prompted to know, nor in the exercise of reasonable diligence could have discovered, that their conduct could be the basis of a claim for medical malpractice.

However, after he passed, is there a material issue of fact as to whether his Estate, and, particularly, his Personal Representative, would be prompted to know, or in the exercise of reasonable diligence could have discovered, that their conduct could be the basis of medical malpractice?

The Court agrees that Nadir's [sic] Affidavit should be stricken …. The Court also agrees that most of Michelle Kendra's Affidavit should also be stricken. Hearsay declarations of the state of mind of her family members and acquaintances, and misstatements of [AP], without any foundation as to whom and when these misstatements were made, are clearly inadmissible. However, the seminal statement in her Affidavit, regardless of any lack of artful drafting, was that she, as Personal Representative of John Kendra's Estate, did not become aware that the implant of a [CRT-D], 3 stress tests, 14 echocardiograms, 3 carotid dopplers, 1 bypass, 19 AV Optimizations, 2 heart catheterizations, and subsequent surgeries for generator replacement and new leads that her father experienced during the last six years of his life had the potential of forming a basis for a claim of medical malpractice until October, 2014.

Notwithstanding the fact that the implant and subsequent procedures could, indeed, ultimately found [sic] not to be medical malpractice or the cause of John Kendra's death, the Estate should not be denied "… access to the courts and [its] ability to pursue a valid claim …[]" because John Kendra and his Estate simply did not know, or, even in the exercise of reasonable diligence, could not discover, any possibility that the implant and

subsequent treatment and procedures, the nature of which and
general acceptance of their use in cardiac patients like John
Kendra, could be medical malpractice.

IT IS THEREFORE ORDERED by the Court as follows:

1. The Motion to Strike the Affidavit of Nadim Nasir, Jr., MD,
is granted.

2. The Motion to Strike the Affidavit of Michelle Kendra is
granted in part and denied in part.

3. The Motion for Summary Judgment … is denied.

Appealed Order at 3-5 (citations omitted). Appellants were granted permission
to file this interlocutory appeal.[2]

# Discussion and Decision

[6]     Appellants contend that the trial court erred in denying their summary
judgment motion. "We review such rulings de novo. Pursuant to Indiana Trial
Rule 56(C), a summary judgment movant must make a prima facie showing
that there are no genuine issues of material fact and that it is entitled to
judgment as a matter of law." *Matter of Sarkar*, 84 N.E.3d 666, 672 (Ind. Ct.
App. 2017) (quoting *Morris v. Crain*, 71 N.E.3d 871, 879 (Ind. Ct. App. 2017)).

---

[2] Michelle does not appeal the ruling on Appellants' motion to strike the affidavits. After the hearing,
Appellants filed a motion to strike references that Michelle's counsel had made during the hearing to another
medical malpractice case for which an interlocutory appeal had been denied. The trial court did not rule on
this motion, and AP and AMP contend that it should have been granted. Given our resolution of this
appeal, we need not address that issue. The same goes for their assertion that the trial court should have
stricken Michelle's affidavit in full.

"If the movant satisfies this burden, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial." *Id*. (quoting *Morris*, 71 N.E.3d at 879). "Our review of a summary judgment motion is limited to those materials designated to the trial court." *Webb v. City of Carmel*, 101 N.E.3d 850, 860 (Ind. Ct. App. 2018). We view the pleadings and designated materials and construe all facts and reasonable inferences from those facts in favor of the nonmoving party. *Id*. A trial court's summary judgment ruling is cloaked with a presumption of validity, and the losing party bears the burden of showing that the trial court erred. *Id*. at 861. "Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court." *Id*.

[7] "The statute of limitations defense is particularly suitable as a basis for summary judgment." *Anonymous Physician v. Wininger*, 998 N.E.2d 749, 751 (Ind. Ct. App. 2013). The plaintiff need not anticipate a statute of limitations defense and plead matters in avoidance in the complaint. *Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 466 (Ind. 2017). But when the summary judgment movant "asserts the statute of limitations as an affirmative defense and establishes that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense." *Wininger*, 998 N.E.2d at 751.

[8] Indiana Code Section 34-18-7-1 "is an 'occurrence' statute as opposed to a 'discovery' statute." *Brinkman v. Bueter*, 879 N.E.2d 549, 553 (Ind. 2008).

"Because this statutory time limit begins to run upon the occurrence of the alleged malpractice, without regard to the date of actual or constructive discovery of injury or malpractice by a person sustaining harm, literal application of the statute has been found unconstitutional in certain situations." *Booth v. Wiley*, 839 N.E.2d 1168, 1170-71 (Ind. 2005). In *Martin v. Richey*, 711 N.E.2d 1273 (Ind. 1999), our supreme court held that the "statute of limitations may not constitutionally be applied to preclude the filing of a claim before a plaintiff either knows of the malpractice and resulting injury or discovers facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury." *Booth*, 839 N.E.2d at 1171.

> Under an occurrence-based statute, … the critical issue is what reasonable diligence requires, not when the claim accrues or is discovered. *Because the Medical Malpractice Act provides an occurrence-based limitations period, reasonable diligence requires more than inaction by a patient who, before the statute has expired, does or should know of both the injury or disease and the treatment that either caused or failed to identify or improve it, even if there is no reason to suspect malpractice.* As a matter of law, the statute requires such a plaintiff to inquire into the possibility of a claim within the remaining limitations period, and to institute a claim within that period or forego it.

*Herron v. Anigbo*, 897 N.E.2d 444, 449 (Ind. 2008) (emphasis added). "A plaintiff does *not* need to be told malpractice occurred to trigger the statute of limitations." *Brinkman*, 879 N.E.2d at 555 (emphasis added).

[9] The "critical date" on which a patient either knows of malpractice and the resulting injury or learns of facts that, in the exercise of reasonable diligence,

should lead to the discovery thereof is known as the "trigger date." *Herron*, 897 N.E.2d at 449. "The length of time within which a claim must be filed after a trigger date in an occurrence-based statute … varies with the circumstances." *Id*. "A plaintiff whose trigger date is after the original limitations period has expired may institute a claim for relief within two years of the trigger date." *Id*. "But if the trigger date is within two years after the date of the alleged malpractice, the plaintiff must file before the statute of limitations has run if possible in the exercise of due diligence." *Id*. "If the trigger date is within the two-year period but in the exercise of due diligence a claim cannot be filed within the limitations period, the plaintiff must initiate the action within a reasonable time after the trigger date." *Id*.

[10]     Here, Appellants contend that John "was aware of both his condition [i.e., congestive heart failure and chronic pulmonary obstruction] and the surgery he would undergo for that condition, and he was also aware that his condition failed to improve in the years leading up to his death" from congestive heart failure and chronic obstructive pulmonary disease. AH Appellant's Br. at 9; *see also* AP/AMP Appellants' Br. at 39 (noting that John "was aware that the device was inserted for the purpose of treating his heart problems, and according to [Michelle], he suffered severe physical and mental injuries as a

direct consequence of the transplantation of the device.").[3]  According to Appellants, "[n]othing else was required under Supreme Court precedent to trigger a duty to investigate the possibility of malpractice.  Equitable tolling therefore does not save [Michelle's] case from the statute of limitations."  *Id.*

[11]  We agree.  Even if John and Michelle had no reason to suspect malpractice, reasonable diligence required them to inquire into the possibility of a claim before the proposed malpractice complaint was filed in 2015.  We need not pinpoint the trigger date, but it was certainly no later than the date of John's death in 2012, more than three years before the complaint was filed.  Consequently, we reverse the denial of Appellants' summary judgment motion.  *See Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1100 (Ind. Ct. App. 2018) (reaching same conclusion under substantially similar factual circumstances involving same Appellants and another patient who received allegedly unnecessary CRT-D), *trans. pending*.

[12]  Reversed.

Najam, J., and Pyle, J., concur.

---

[3] Michelle's attempt to repudiate the relevant allegations in her complaint is not well taken.  *See Stewart v. Alunday*, 53 N.E.3d 562, 568-69 (Ind. Ct. App. 2016) (holding that judicial admissions, which "may be contained in … current pleadings in the case being tried," are "conclusive and binding" upon the party making them).  So too is her assertion that Appellants failed to raise a tolling argument below and therefore waived it.  *See* Appellants' App. Vol. 2 at 37 (tolling argument in AP and AMP's summary judgment brief).